JOSEPH DION, Jr., *vs.* ST. JOHN BAPTISTE SOCIETY.

York.   Opinion February 11, 1890.

*Lottery.   Scheme, or device of chance.   Church-fair.   R. S., c.* 128, §§ 13, 15.

The game, practiced in aid of fairs and charities of voting with tickets pur-
chased at fixed prices for candidates, of whom one in whose name the most
tickets are voted is to receive some article which the whole number of
tickets pays for, is not illegal either under the statute, or at common law in
this state.

ON MOTION.

The plaintiff brought this action to recover the money con-
tributed by him and his friends at a church-fair of the defend-
ant society, and at which he competed as a candidate for a gold
watch, to be awarded to the candidate who should receive the
most votes.   He was the first vice-president of the society.

In February, 1888, the defendant society held a fair in Marble
Hall, Biddeford.   The object of the fair was to raise money to
assist them in their benevolent work.   One method adopted by
them to make the fair a success, financially, was to purchase a
gold watch.   And the society selected the plaintiff, then its first
vice-president, and Joseph LaChance, its second vice-president,
as candidates to run for the watch.   The programme was that

there should be two boxes, one marked for each candidate, and each candidate and his friends were at liberty to place in the boxes such amounts of money as they saw fit. At the end of twenty minutes, from the time the boxes were opened, they were to be closed. Each candidate had two men stationed beside his box to see that his candidate's money was put in the right box. When the boxes were closed the money was to be counted in the presence of the candidates and their representatives, and the candidate having the most money was to receive the watch. The candidates' friends went to work, soliciting money for their respective candidates ; and all the money deposited in the plaintiff's box, with the exception of twenty-five dollars, was contributed by his friends.

At twenty minutes of 10, P. M., the boxes were opened. At 10 P. M., they were closed, and the two representatives of each candidate, who watched the money deposited in the boxes, saw the money counted. In the plaintiff's box there was $147.00. In the box of LaChance there was, in addition to the money, a check. Counting the check, LaChance had the most money, and the committee decided that the watch belonged to him.

The jury returned a verdict for the plaintiff.

The material parts of the statute, on which the action was brought read as follows :—

Sec. 13. Every lottery, scheme, or device of chance, of whatever name or description, whether at fairs or at public gatherings, or elsewhere, and whether in the interests of churches, benevolent objects or otherwise, is prohibited and declared a nuisance ; * * *.

Sec. 15. Payments, compensations, and securities of every description, made directly or indirectly, in whole or in part, for any such lottery or ticket, certificate, share or interest therein, are received without consideration and against law and equity, and may be recovered back.

*B. F. Hamilton and G. F. Haley*, for defendant.

In the revision of the statutes of 1883, the words that made schemes or devices of chance, of whatever name or description, at fairs or public gatherings, whether in the interest of churches,

benevolent societies or otherwise, liable to all penalties affixed to lotteries, were omitted. This omission is not to be revived by construction. *Pingree* v. *Snell*, 42 Maine, 53. No presumption that the omission was by mistake. *Ellis* v. *Paige*, 1 Pick. 44.

Lottery in § 13 means the commonly accepted use of the word, otherwise "schemes and devices of chance" would not have been used in the same section. If any offense, it was because it was a scheme or device of chance.

It was not a scheme or device of chance. Plaintiff could have received the watch if he had put in money enough,—thus removing all uncertainty and hence not a game of chance. Only twenty-five dollars was the plaintiff's money. Verdict should not exceed that sum.

*R. P. Tapley, C. S. Hamilton*, with him, for plaintiff.

The purpose of the transaction was to obtain money and not render a full equivalent therefor. It was a scheme to entice the two parties to enter into chances of obtaining a watch without paying the full value for it. The participants understood it was a drawing. All knew but one could win, and that by secret acts,—the mainspring of the proceeding. Without varying chances no stimulation for action was offered. Without secrecy it would be but an auction. When made the subject of chance and uncertainty, the stimulation arises. It has all the mischiefs which the statute was made to correct.

The statute covers all devices and schemes of "whatever name or description."

This proceeding is against the party holding the fund, and the watch ; the statute declares such funds are held without consideration.

In the revision of 1883, instead of using the words of the act of 1887 with reference to fairs and public gatherings, whether in the interest of churches or benevolent objects, a portion is incorporated into R. S., c. 128, § 12, and then provided in § 15, that all payments in any such lottery, etc., may be recovered back. "Any such lottery," etc., must mean such games of chance as are there provided for.

The action is sustained by the common law. *Stacy* v. *Foss*, 19 Maine, 335; *House* v. *McKenney*, 46 Id. 94; *Jordan* v. *McKenney*, 48 Id. 104, 107; *Ball* v. *Gilbert*, 12 Met. 402.

PETERS, C. J. It is not readily perceived how the verdict for plaintiff can stand, in view of several objections that are urged against it.

If it stands, the verdict will return to the plaintiff not only the money of his own which went into the box provided for the reception of votes cast in his favor, but also all the money that was supplied for the same purpose from all other sources. He evidently tries by his testimony to carry the impression that all the money paid in indirectly on his account, was his money. But the facts, when understood, show that the money contributed by his friends was not given by them to him, and that it was intended as a gift to the defendant society.

Again, there is doubt whether the present statute allows a recovery back, unless the money be expended in a lottery of some kind, which the scheme in this case was not. The counsel for plaintiff contends that the defendants were a stakeholder or trust-holder of the contributions, and that at common law the money may be recovered back. It is a perversion of the facts to style the defendants a stakeholder. They were the principal. The money was passed to them, not to hold for others, but to keep on their own account,—to become their money.

But we pass these points, after this mention of them as having a possible bearing on another question, and place our decision of the case upon a more important ground, which is, that the thing complained of was not "a lottery, scheme or device of chance," within the intent of the statute. Everything is not a game of chance that chances may attach to. The refinement of illustration indulged in by counsel for plaintiff to demonstrate this matter to be a game of chance, would apply with well nigh equal force to the general transactions of life. The scheme, at this time one of the fashions of society to obtain aid for charitable purposes, seems to amount to this : The charitable association offers an article for presentation to the person, in some profession, office or occupation, in whose name the most money is con-

tributed for the article. The article is not drawn by any ticket nor by any person; the only possible chance, if it can be called such, connected with the affair, being whether one person's admirers or another's will give the most money to charity, in order to obtain the prize for their favorite or friend; the affair usually arousing sentiment enough to render the game profitable. No contributor expects to get any personal benefit from his contribution, nor can he, beyond a merely sentimental enjoyment, unless he immodestly and clandestinely votes (pays in) money for himself, as this plaintiff avers he did, and that would be an imposition upon the decencies of the occasion. From the nature of the plan, no one would attempt to carry it on for any private gain. There could be no motive to sustain it for any such purpose. It is impossible that all persons engaged in such a scheme are guilty of gambling and liable to imprisonment for it. Such a construction of the statute is illegal and unjust.

*Motion sustained.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.