### W. A. HOUTS, Appellee, v. SIOUX CITY BRASS WORKS ET AL., Appellant.

**Corporations:** NOTES: EXECUTION. The renewal note of a corporation is not rendered invalid because executed by an officer who has been superceded, where the signature of such official is not essential thereto.

**Corporate debts:** LIABILITY OF STOCKHOLDERS: ACTION AGAINST. Failure to publish notice of incorporation renders the stockholders liable for corporate debts, and it is no objection to a suit against them as such that they are designated in the petition as co-partners.

**Same.** The question of whether one who buys stock in a defectively organized corporation is liable for the debts of the corporation contracted prior to his purchase, has not been determined in this State, and owing to the state of the record is not determined in this action.

**Parol evidence:** VARIANCE OF WRITING. Parol evidence is not admissible to vary the terms of a written instrument.

**Same.** Where it was alleged in an action on a corporation note that the payee should turn the note in as payment on a contract of the corporation to furnish him certain articles, such agreement if proven will not destroy the enforcibility of the

note upon failure of the corporation to perform, but at the most will only form the basis of a claim for damages.

**Appeal:** REVIEW OF QUESTIONS NOT RAISED BELOW. A matter which
6   is not presented to the trial court will not be reviewed on appeal, and when justice to the trial court demands the appellate court will on its own motion enforce the rule.

**Receivers:** RIGHT OF DEBTOR TO ASSETS. Where the business of
7   a concern has passed into the hands of a receiver, under an order of court broad enough to cover a claim for damages, the debtor cannot sue to recover the same prior to a discharge of the receiver, or satisfaction of creditors, although the same may not have been listed among the assets.

*Appeal from Woodbury District Court.*— HON. JOHN F. OLIVER, Judge.

WEDNESDAY, JANUARY 9, 1907.

REHEARING DENIED, MONDAY, MAY 20, 1907.

THE facts are sufficiently stated in the opinion. At the close of the evidence, there was judgment in favor of plaintiff on a directed verdict, and the defendants appeal.— *Affirmed.*

*R. H. Brown,* for appellants.

*Pendleton & Wakefield* and *J. W. Hubbard,* for appellee.

BISHOP, J.— Considerable confusion exists in the record, and we have had not a little difficulty in getting at a fair understanding of the questions sought to be raised on the appeal. As originally brought the suit was to recover upon two promissory notes each dated February 8, 1897, aggregating $700. executed in the name of the defendant Brass Works to plaintiff as payee, and in each the time of maturity was fixed at four months after date. Recovery was sought, not only as against the Brass Works, but as against the individuals made defendants, viz.: F. T. Green, J. H. Green,

H. O. Woodruff, and L. G. Wilson. The averment for liability on the part of the individuals named is that the Brass Works, while " presumably incorporated under the laws of Iowa, was at all times a voluntary association and is in fact a copartnership  .  .  .  composed of the defendants above named," and this for the reason that no notice of incorporation was never published as required by law. Subsequently plaintiff by amendment added an additional count to his petition. Therein it was alleged that on May 9, 1896, a contract in writing was entered into between himself and the Brass Works, the substance of which was that the latter was to construct for him (plaintiff) 1,000 automatic telephone switches, for which plaintiff was to pay $5,000. " as the work progresses." No time within which the work should be done was specified. A further allegation is that on April 22, 1897, the contract was extended by writing to include 1,000 telephone dials, for which plaintiff was to pay an additional sum of $1,000. and on the conditions specified in the original contract. Advancement under the contract of the sum of $4,265. exclusive of the amount of the notes set out in the first count, is alleged, and plaintiff says that he has received only one hundred dials and switches of the value of $600. And the complaint is that defendants refuse to complete and make delivery of the remaining instruments so contracted for. The same averments as to liability on the part of the individual defendants is made as in the first count. Judgment on this count was demanded in the sum of $3,655. The defendants, except Wilson, appeared, and, pleading to the first count of the petition, they deny all allegations not thereinafter admitted; deny on information the execution of the two notes alleged; allege that such notes, if executed, were without authority, and, as against the defendants Green, fraudulent. By way of further defense, defendants plead the written contract, the substance of which is set out in the count 2 of the petition; and they then plead " that it was also agreed between the parties that the two

notes sued upon should be considered as a last payment upon said contract, and should not become due and payable until said contract was completed . . . nor unless plaintiff had complied with his contract to furnish the money necessary for the labor and material for the construction of the dials and switches." Further, that by the agreement the money represented by said notes was to be and was expended in the purchase of special machinery for the manufacture of the contemplated dials and switches, and that the notes were to be paid " in the labor for constructing said dials and switches "; that " up to April 24, 1897, the plaintiff had paid on said contract $4,050. and thereafter failed and refused ·to provide more money to defendant to complete said dials and switches although often requested," etc. No answer to the second count of the petition was made, as the same had been withdrawn.. In what is denominated a counterclaim and set-off defendants allege that the notes sued on by plaintiff are not due or a binding obligation because of the failure of plaintiff to comply with his agreement as alleged in the answer. And they allege that, by reason of such failure, they have been damaged in the sum of $1,950. being the difference between the amount paid in by plaintiff and the contract price. And judgment for that sum is asked. Plaintiff replied, denying the alleged oral portion of the agreement set up in the answer; denying failure on his part to perform; and denying ownership on the part of defendants in the matter of damage alleged in the counterclaim.

I.   Having the contentions of the parties as made in pleading before us, we may proceed to a consideration thereof, and in the light of the facts as brought out in evi-

1. CORPORATIONS: dence. Quite naturally the first question is, notes: execution. were the notes sued upon the authorized obligations of the Brass Works? The notes are executed in the name of the Brass Works, " by L. G. Wilson, Pres., H. O. Woodruff, Secy.". The sole contention for invalidity is that

Woodruff was not secretary; that he had been succeeded in that office on February 5th, preceding, by F. T. Green. Whether plaintiff was chargeable with notice of the change in officers, or could be affected thereby, we need not inquire, as it does not appear that the signature of the secretary was necessary to give validity to the notes. An estoppel is not pleaded, but we add the suggestion that defendants ought not in any event to challenge the binding character of the notes, in view of the fact conceded in the evidence that such notes were given in renewal of past due obligations, confessedly valid, held by plaintiff against the defendant works, and it is not pretended that there has been any offer to restore the *status quo*. 10 Cyc. 1068.

II. Were the individual defendants named liable for the debt evidenced by the notes sued on in their individual capacity? It was fairly proven that no publication of notice of the formation of the corporation was ever had within the time and as required by law. This was sufficient to fasten liability for corporate debts on the stockholders. Code, sections 1613, 1614, 1616; *Berkson v. Anderson,* 115 Iowa, 674; *Maine v. Midland Inv. Co.,* 132 Iowa, 272.

*2. CORPORATE DEBTS: liability of stockholders: action against*

It is argued by counsel for appellant, however, that plaintiff was not entitled to recover as against the individual defendants, because their liability, if such there was, arose out of the statute, whereas they were declared against as copartners and were so found to be by the court. The argument is devoid of any merit. It is not of any moment that the defendants were designated in the petition as copartners. It is evident that they were being proceeded against as stockholders, and liability was charged against them because of the defective organization of the corporation, and in virtue of the statute. This was the view taken by the trial court in ruling upon the motion and entering judgment.

Further, it is said in argument that the motion for verdict should not have been sustained as to the defendants

Green for the reason that they did not become stockholders in the corporation until after the indebtedness to plaintiff had been incurred.   Whether one who buys stock in a defectively organized corporation incurs liability, in virtue of the statute provision, for debts of the corporation contracted prior to the date of his stock purchase is an open question in this State.   And it is a question of importance — one that we should not attempt to decide until properly presented and fairly argued.   In their answer defendants present no such question.   All that is said as to these particular defendants is that the notes were fraudulent.   And that expression is not given any meaning in the evidence.   Nor is it certain from the record what are the facts.   To one interrogatory attached to the petition the defendant J. H. Green answered that his connection with the corporation commenced February 29, 1897, and to another he answered that his stock was issued to him about February 5, 1897.   The defendant F. T. Green answered the first by saying that his connection began December 30, 1897, and to the second that his stock was issued on or about that date.   The defendant last named was a witness on the trial, and testified that he became connected with and took stock in the corporation on February 5, 1897; that on that day he was elected secretary and entered upon his duties.   It will be observed that the notes sued upon were executed February 8, 1897.   It is said that they were renewal notes, but what they were given to renew, or when the old obligation was incurred, does not appear.   To some extent there is argument on the question by counsel for appellant, while counsel for appellee have contented themselves with citing some authorities which as we think do not reach the point.   In this state of the record we do not feel called upon to make any pronouncement on the subject.

3. SAME.

III.   It will be observed that, in the defensive part of their answer, defendants contend that, by oral agreement of the parties, the notes in suit were not to be paid in money;

that such notes were to be available to plaintiff only in mak-

4. PAROL
EVIDENCE:
variance
of writing.

ing final payment on the contract for tele-
phone appliances. Going to the record of the
trial, we find that the evidence on the subject
is confined to the testimony of one witness — the defendant
Woodruff — and as it is brief we set it out in full: " I
first met plaintiff in 1895. The first agreement with him
was oral and afterwards reduced to writing. The oral
agreement was that the Brass Works should make 1,000
phones for $6,000. Of that amount plaintiff was to ad-
vance money to get equipped for making them. . . . He
advanced $700. We gave him notes for it. The notes were
to be turned in as a last payment on contract, and while
we were making the switches he was to pay for material and
work as it progressed." The date of this oral agreement
does not appear. We take it that the witness meant to be
understood that the $700. was advanced, and the notes given,
under the oral agreement. Indeed, when we come to in-
spect the written agreement that followed, this would seem
to be made certain. As we have seen, such written agree-
ment was entered into May 9, 1896. Therein 1,000
switches were contracted for and the consideration expressed
was $5,000. to be paid " as the work progresses." But there
is no reference to an advancement of money or to any notes.
At the close of defendant's evidence, plaintiff moved to strike
out so much of the testimony of Woodruff as had relation to
the oral agreement on the ground that the subsequent writ-
ings became conclusive as to the contract rights of the par-
ties, and this motion was sustained. It is insisted that here
was error, and, further, that with the evidence remaining in
the record the motion to instruct a verdict must have been
overruled. We think there was no error.

If there could be doubt — and we think there is none
— as to the correctness of the ruling put upon the ground
that evidence of a previous oral agreement was not compe-
tent to add to or vary the terms of the writings (*De Long v.*

*Lee*, 73 Iowa, 54; *Kelly v. Railway*, 93 Iowa, 445), still,

5. SAME. there are other sufficient reasons upon which the ruling can be sustained. It was conceded on the trial that the contract had been abandoned before completion. Fire had destroyed the plant of the Brass Works — in part, at least; it had become insolvent, and its business closed out at the hands of a receiver. If, now, defendants were permitted to stand in a defensive way upon the alleged oral agreement, the effect would be to wholly destroy the enforceability of the notes as binding obligations. And this without any reference to the situation of the parties as of the time when work under the contract ceased, or to any matter of injury or damage consequent thereon. No court would countenance such a result. There had been no failure of consideration of the notes; the Brass Works received the advancement of money, and became the owner of the machinery purchased with such money. The oral agreement alleged had relation only to the time and manner of repayment. If then, an agreement so made could be proven at all, in view of the situation in which the parties ultimately found themselves, it should be given effect, not to destroy the enforceability of the notes representing the advancement, but, at best, as a basis on which to rest a claim for damages. Now, here no claim for damages is presented on account of any such matter; the demand of the counterclaim is for a sum representing the difference between the money received from plaintiff — exclusive of the amount of the advancement — and the contract price. A further reason is that, upon the face of the record, it is not clear that the notes in suit in any way represent the sum of money advanced. True, the aggregate amount of the notes is the same as the amount of the advancement, but they are dated long after the contract had been entered upon, and there is nothing in evidence to show their origin save that they were given " to take up binding ones regularly issued."

IV. It is a further contention of appellant that the

motion for verdict should have been overruled and a recovery by plaintiff denied, for that, according to the evidence, there was due from plaintiff under the contract a sum quite equal to the amount of the notes; that is to say, labor and material had been expended by the Brass Works· in the manufacture of the switches, etc., for which plaintiff was obligated under the contract to pay, exceeding in amount and value the gross sum paid by plaintiff, and such excess being sufficient to pay and cancel the notes in suit.   Here, also, is matter presented in this court for the first time.   Plaintiff was not called upon to meet any such issue on the trial, and the trial court did not attempt a determination of any such matter.   Accordingly we have no question before us for review.   And this we think should be said irrespective of the fact that the point is not raised in argument by appellee.   We will take note of the record and enforce the rule on our own motion where justice to the trial court demands it.

6. Appeal: review of questions not raised below.

V.   Error on the part of the trial court in permitting a " dismissal of plaintiff's counterclaim against the objections of defendant " is contended for.   We are at a loss to know what is meant by this.   If the dismissal by plaintiff of the second count of his petition is the matter referred to, there was no error.   Such is directly authorized by Code, section 3764.   Code, section 3766, cited by counsel, will be found on second reading to have application only to. the right of a defendant to proceed on a counterclaim notwithstanding the dismissal by plaintiff of his cause of action.

VI.   Lastly, it is insisted that the motion to direct a verdict should not have been sustained as to the counterclaim for damages pleaded by defendants.   In October, 1898, the business of the Brass Works went into the hands of a receiver, and the receivership seems to have been general.   Indeed, it is not questioned but that the order of appointment was broad enough to cover the claim of damage in question.   The claim, however, was not

7. Receivers: right of debtor to assets.

listed by the receiver. Subsequently an order of court was made in the receivership proceedings, directing the receiver to make sale of all the assets of the corporation, and in due time a report was made showing a sale of such assets as a whole to the Hawkeye Electric Company. These facts being made to appear on the trial of the instant case, the court, in ruling on the motion for verdict, expressed the opinion, as shown by the record, that the defendants could not sue; that the claim for damages had passed to the Hawkeye Company. The contention of appellants is that in this the trial court was in error. And the argument is that, inasmuch as the claim had not been listed by the receiver, it cannot be held to have entered into the sale; it was not within the contemplation of the receiver in making the sale, or of the Hawkeye Company in making its purchase. But, even if this were so, in view of the record before us, we cannot see how defendants are helped any. If the right of action was not transferred to the Hawkeye Company, it must remain in the receiver. And, as it does not appear from the record before us that the receiver had been discharged, or that the creditors of the corporation have all been satisfied, it would seem to be certain that defendants are not entitled to wage suit to reduce the claim to their possession. There was, then, no prejudicial error.

Upon the whole record, we are satisfied that the judgment should be, and it is, *affirmed.*