## CONQUEROR TRUST CO. v. SIMMON.

No. 7639—Opinion Filed January 23, 1917.

(162 Pac. 1098.)

**1. Lotteries—Sale of Merchandise—"Lottery."**

The sale of merchandise under a contract that provides a scheme or plan to stimulate trade, where tickets are given with purchases of goods at regular prices and the distribution of prizes are not determined by lot, but are awarded to the persons holding the greatest number of such tickets representing the greater value of such purchases in the order of such holdings for the several prizes so given, is not a lottery, and is not illegal, unlawful, or void as against any statute or public policy of our state.

**2. Alteration of Instruments—Negotiable Instruments Law—"Material Alteration"—Detachment from Contract.**

Merely detaching a negotiable promissory note from a contract to which it is attached by perforation for the purpose of being detached when such detachment does not make any change or addition which alters the effect of the instrument in any respect, is not a "material alteration" under the negotiable instruments act of this state.

**3. Bills and Notes—Holder for Value—Alteration.**

When an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.

**4. Bills and Notes—Action by Holder in Due Course—Failure of Consideration—Defense.**

In an action upon four negotiable promissory notes by a holder in due course the maker of the note offered in evidence a written contract between him and the payee, executed as a consideration for the notes, and to show that the payee had violated the contract, and that the consideration of the notes had failed after their negotiation and after the maturity and payment by him of the two first notes of the series of six, and before the maturity and payment of the remaining four sued on; held, that said evidence was improperly admitted and constituted no defense to the action, in the absence of any showing, or attempt to show, that the holder in due course had notice of such con-

tract and of the failure of the consideration at or before the time he purchased said notes.

(Syllabus by Davis, C.)

Error from County Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by the Conqueror Trust Company against J. M. Simmon, doing business as the Simmon Mercantile Company. Judgment in favor of defendant and against plaintiff, and plaintiff brings error. Reversed and remanded, with directions.

Geo. C. Beidleman, Fred W. Kelsey, and E. F. Cameron, for plaintiff in error.

McCrory & Johns, for defendant in error.

Opinion by DAVIS, C. The petition of the plaintiff in this cause in the court below, together with the exhibits thereto attached, speak for themselves, and are as follows:

"Comes now the plaintiff and states that it is a corporation duly organized and existing under and by virtue of the laws of the state of Missouri, with place of business at the city of Joplin in said state, and is engaged in the banking business, and that the defendant is doing business at Morris, Okla., under the name and style of Simmon Mercantile Company. Plaintiff for its cause of action alleges and states:

"(1) That on the 18th day of September, 1912, at Morris, Okla., the defendant, J. M. Simmon, made, executed, and delivered to the Southwestern Sales Company his promissory note in writing of that date, whereby he promised to pay to the said Southwestern Sales Company, or order, four months after date thereof, the sum of $50, whereby defendant became liable and bound to pay said sum therein specified.

"(2) Plaintiff further states that on the said 18th day of September, 1912, at Morris, Okla., the defendant, J. M. Simmon, made, executed, and delivered to the Southwestern Sales Company his second promissory note in writing of that date, whereby he promised to pay to the Southwestern Sales Company, or order, five months after date thereof, the further sum of $50, whereby he became liable and bound to pay said sum therein specified.

"(3) Plaintiff further states that on the said 18th day of September, 1912, at Morris, Okla., the said defendant, J. M. Simmon, made, executed, and delivered to the Southwestern Sales Company, his third promissory note in writing of that date, whereby he promised to pay to said Southwestern Sales Company, or order, six months after date thereof, the further sum of $75, whereby he became liable and bound to pay said sum therein specified.

"(4) Plaintiff further states that on the said 18th day of September, 1912, at Mor-

ris, Okla., the defendant, J. M. Simmon, made, executed, and delivered to the Southwestern Sales Company his fourth promissory note in writing of that date, whereby he promised to pay to said Southwestern Sales Company, or order, seven months after date thereof, the further sum of $75, whereby he became liable and bound to pay said sum therein specified.

"(5) That after the execution and delivery of said promissory notes, and before the maturity of the same, and for a good and valuable consideration and in due course of banking business, said Southwestern Sales Company indorsed said notes herein sued on in writing, and delivered and sold the same to this plaintiff, who thereupon became and now is the bona fide holder and owner thereof without notice of any defense thereto. That no part of said above mentioned notes have been paid, and the same are wholly due.

"(6) Plaintiff further states that there is due and owing on said notes to this plaintiff the sum of $250, with interest thereon at the rate of 6 per cent. per annum from the date of the maturity of each of said notes; that demand for payment has been made on plaintiff, and plaintiff refuses to pay this debt.

"Copies of said notes and indorsements thereon are attached hereto and filed herewith as a part hereof, marked Exhibits A, B, C, and D.

"Wherefore plaintiff prays judgment against said defendant, J. M. Simmons, for the sum of $250, with interest thereon at the rate of 6 per cent. per annum from the date of the maturity of each of said notes, and for all costs of this action, and for all proper relief.

"Geo. C. Beidleman,
"Attorney for Defendant."
Exhibit A.
"P. O. Morris, State Okla.
"9/18/1912.

"For value received we promise to pay to the order of the Southwestern Sales Co. fifty dollars, at ——, payable as follows: Four months after date. Amount $50.00.

"(Signed) Simmon Merc. Co.
"By J. M. Simmon.

"Conqueror Trust Co.
"Loan No. 4911.
"Joplin, Mo. 1/18/13.

"(The Southwestern Sales Co.,
"By M. A. Sneed."

Exhibit B.

"P. O. Morris, State Okla.
"9/18/1912.

"For value received we promise to pay to the order of the Southwestern Sales Co. fifty dollars, at ——, payable as follows: Five months after date. Amount $50.00.

"(Signed) Simmon Merc. Co.
"By J. M. Simmon.

"Conqueror Trust Co.
"Loan No. 4912.
"Joplin Mo.

"(The Southwestern Sales Co.,
"By M. A. Sneed.)"

Exhibit C.

"P. O. Morris, State Okla.
"9/18/1912.

"For value received we promise to pay to the order of the Southwestern Sales Co. seventy-five dollars, at ——, payable as follows: Six months after date. Amount $75.00

"(Signed) Simmon Merc. Co.
"By J. M. Simmon.

"Conqueror Trust Co.
"Loan No. 4913.
"Joplin, Mo.

"(The Southwestern Sales Co.,
"By M. A. Sneed.)"

Exhibit D.

"P. O. Morris, State Okla.
"9/18/1912.

"For value received we promise to pay to the order of the Southwestern Sales Co. seventy-five dollars, at ——, payable as follows: Seven months after date. Amount $75.00

"(Signed) Simmon Merc. Co.
"By J. M. Simmon.

"Conqueror Trust Co.
"Loan No. 4914.
"Joplin, Mo.

"(The Southwestern Sales Co.,
"By M. A. Sneed.)"

This petition was filed in the district court of Okmulgee county, Okla., on November 18, 1913. That to this petition the defendant filed the following answer and cross-petition:

"(1) Comes now the defendant and for answer and in defense to the plaintiff's petition denies each and every allegation in said petition excepting such as are hereinafter admitted; denies that plaintiff has a cause of action against defendant, and denies that plaintiff is entitled to any relief or judgment against defendant.

"(2) Defendant denies that he executed the several alleged notes, Exhibits A, B, C, and D, respectively, as alleged by plaintiff, but on the contrary, states that he did sign and enter into a certain contract with the Southwest Sales Company, which was, in substance, as follows:

" 'The Southwestern Sales Co.
" 'Morris, State of Okla.,
" '9—18—1912.

" 'The Southwestern Sales Co.—Gentlemen: On your approval of this order deliver to me at your earliest convenience, F. O. B. factory or distributing point; the —— and advertising matter described in this contract. We agree to take back any pens left on hand at

close of contest and pay $1.00 each for same, and send me your bond to cover this agreement with me.

" 'To make this last above clause binding upon you, I agree to take the shipments promptly, carry out the contest plan, promptly meet all obligations entered into under this agreement, keep the piano well displayed in my store, issue piano votes with every cent purchased, and report to you every sixty days my gross sales, and furnish you with any other information you may desire to enable you to assist in pushing the contest. In consideration of the special methods of conducting the contest and the special terms and agreements herein and giving the exclusive contest for Morris, our city, it is expressly understood that this order cannot be countermanded, I desire —— finish on piano.

" '——————————————————

" 'This order shall consist of the following:

1 Acme piano.
1 sewing machine.
1 diamond ring 3/16.
1 ladies' gold watch, Elgin.
1 gold bracelet.
350 fountain pens.

" 'All additional matter to contest to start.'

"That attached to and as a part of said instrument and contract, when executed and delivered by defendant, there was a series of alleged notes consisting of six in the form as Exhibits A, B, C, and D, referred to by plaintiff in its petition. The said exhibits being then so attached, that is, the originals, as a part of said original contract.

"That the contract, as above set forth, when executed and delivered was upon one and the same paper, and, as intended, constituted one and the same instrument and the alleged notes, upon which plaintiff sues, were and are part of the entire contract, and did not and do not constitute a series of promissory notes servable and distinct from the contract, as declared upon by the plaintiff; that the defendant, not having consented to such severance or alteration, is not liable to plaintiff upon said alleged notes or for the non-payment thereof.

"(3) Defendant as a further defense avers the transaction or consideration for which said alleged notes were executed was illegal, in that the said sales company conceived and engaged in the scheme or business of placing various articles (not exceeding six pieces) consisting of piano, sewing machine, watch, diamond ring, bracelet, etc., with various retail merchants, including the defendant, throughout parts of Missouri, Oklahoma, and Arkansas, and through such merchants, including the defendant, debauching the public with a lottery, in that the contract or transaction required the merchants to offer such articles as prizes to contestants, depending upon the result of what is commonly known as a 'voting contest,' based, in this instance,

and in all the numerous instances in which the sales company obtained contracts, upon the sale of certain worthless fountain pens supplied by the sales company, which said pens were by the said company represented to be worth $1 each, and upon which representation defendant relied and believed and communicated to his customers, and upon which they relied.

"That the plaintiff, before acquiring an interest, if any it has in said alleged notes, had knowledge of the nature and character of the sales company business and form of contracts to the extent as should and would have put a prudent person on inquiry of the illegality of the contract of which said notes were a part or based upon, and of the conditions of the contract, including alleged notes.

"(4) By way of counterclaim, defendant avers that he adopts the third paragraph, and so numbered above, as part of this counterclaim as though it was rewritten herein.

"Defendant further avers that, notwithstanding the said knowledge of the Conqueror Trust Company of the designs and fraudulent schemes and character of the business and contracts of the said sales company, it entered into a deal with the sales company to cash the various chose in action, purported notes, arising from said transactions, in all or most cases in which it found the contracting parties solvent, and that in pursuance to such deal or arrangement did in fact take over, and had assigned to it, from time to time during the progress of the sales company's enterprise, purported notes to the extent of about $20,000 or $30,000, and that of such purported notes two, being the two purporting to be due as per contract, on the —— day of ——, 19—, and —— day of ——, 19—, respectively, were taken over by said trust company and collected, collections aggregating $100 from the defendant, before the defendant was aware of or had discovered the fraud so practiced upon him by the sales company, and before defendant had learned of the business relations and intimacy of said trust company with said sales company.

"Wherefore the defendant prays that he have and recover a judgment against said Conqueror Trust Company in the sum of $100. This defendant has heretofore and does hereby offer to return such material and pens acquired under contract to plaintiff or to sales company as plaintiff may desire. Defendant is likewise ready, and produces said pens in court."

To this answer and cross-petition of the defendant the plaintiff filed a reply, denying generally and specifically each and every allegation of new matter set up in said defendant's answer.

Upon the trial on January 18, 1915, the plaintiff offered in evidence before the jury the four notes in question and rested. Thereupon the defendant offered his testimony and

rested. The testimony on the part of the defendant, amongst other things, showed that the defendant saw and knew that the six notes he signed, executed, and delivered to the Southwestern Sales Company were negotiable, promissory notes, and were duly perforated, and in such condition formed a part and parcel of the same sheet of paper with the written contract (New Bank of Eau Claire v. Kleiner, 112 Wis. 287, 87 N. W. 1090); that the plaintiff, the Conqueror Trust Company, purchased these notes in due course of business from the Southwestern Sales Company, before maturity, the date of purchase being September 23, 1912, for value, and without notice, except a general notice and knowledge of the general nature of the business of said Southwestern Sales Company, and with absolutely no notice whatever as to the specific agreement outstanding between the defendant and the Southwestern Sales Company; that at the time the plaintiff so purchased said notes from said Southwestern Sales Company, on September 23, 1912, no breach of said contract between the defendant and said Southwestern Sales Company had occurred, and that the defendant paid the first note due, which was so detached from said contract by means of said perforation and delivered to said defendant on November 21, 1912, and the second of said notes under exactly similar circumstances, on December 31, 1912; that when the third note of the series became due the defendant refused to pay it, or either of the remaining three notes, because of an alleged breach in the contract on the part of the said Southwestern Sales Company.

At the close of all the evidence in the case the plaintiff asked for the following peremptory instruction:

"The court instructs the jury to return a verdict for the plaintiff and against the defendant."

This instruction was refused by the court, and the plaintiff duly excepted, and has duly and properly assigned this ruling on the part of the trial court as reversible error in this case, and urges the same upon the attention of this court. Was this action on the part of the trial court in thus refusing this instruction reversible error?

This contract was not illegal, unlawful, or void as against any statute or public policy of our state. Neither does it constitute a lottery. Holt v. Wood, 14 Pa. Co. Ct. R. 499; McRea v. State (1904) 46 Tex. Cr. R. 489, 81 S. W. 741; Dion v. St. John Baptist Soc., 82 Me. 319, 19 Atl. 825; Quotsoe v. Eggleston, 42 Or. 315, 71 Pac. 66; Yellow-Stone Kit. v. State, 88 Ala. 196, 7 South. 338, 7 L. R. A. 599, 16 Am. St. Rep. 38, and numerous authorities therein cited.

These six notes were negotiable promissory notes under our Negotiable Instrument Act, which became effective in this state June 10, 1909 (chapter 49, Rev. Laws 1910). The defendant, prior to and at the time he signed, executed, and delivered same to the Southwestern Sales Company, saw and knew this fact, and the further fact that they were perforated to be detached from said contract. Two of them were so detached and presented to defendant when due and duly paid by him. We cannot accede to the doctrine that this caused and constituted a material alteration of said notes. Suppose these selfsame, negotiable, promissory notes had been duly pinned to said selfsame contract, it being on a separate sheet of paper from said notes, and the marks of this said common pin were plainly discernible by the holes or perforations in and through and upon said notes, could it be said that the detaching of said notes from said contract by the removal of said common pin would constitute a material alteration of said notes? We think not.

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course not a party to the alteration, he may enforce payment thereof according to its original tenor." Section 4174, Rev. Laws 1910.

"Any alteration which changes: First. The date; Second. The sum payable, either for principal or interest; Third. The time or place of payment; Fourth. The number or the relations of the parties; Fifth. The medium or currency in which payment is to be made; or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." Section 4175, Rev. Laws 1910.

When men give negotiable promissory notes they must be held to incorporate in the body of or upon said notes and each of them any contract, terms, or conditions that will render said notes nonnegotiable or defeat the payment thereof in the hands of innocent purchasers for value and before maturity, or the purchaser of said note must not be a holder in due course at the time the note was negotiated to him by reason of a failure to comply with some one or more of the conditions set forth and contained in section 4102, Rev. Laws 1910. Otherwise the commercial

world would be greatly and dangerously hampered through the use and medium of negotiable promissory notes. There being no contract written into or attached to said negotiable promissory notes at the time the plaintiff became the holder of same in due course, and no breach of any contract out of which said notes grew, and hence no possible knowledge of said breach on the part of the said holder in due course, plaintiff herein, before purchase, the general knowledge of the business transaction and contracts of the Southwestern Sales Company on the part of the plaintiff before purchasing said notes, or the specific knowledge of said contract on the part of the plaintiff, with no breach of same, actual or complained of by the defendant, at the time of the said purchase of said notes by the plaintiff, would not render said notes nonnegotiable under our law, and could not possibly constitute any defense to the payment of same when due, on the part of the defendant, the maker of said notes.

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Section 4107, Rev. Laws 1910.

It will not do to say that, merely because a purchaser of negotiable promissory notes in due course of business for a valuable consideration had knowledge of a legal transaction, contract, or agreement out of which said notes came into existence before purchasing the same before maturity, the maker of said notes can defeat the payment of same by showing that the said contract or agreement between him and the original payee thereof has thereafter been breached by said payee.

Section 4051, Rev. Laws 1910, defines what constitutes a negotiable instrument, and subdivision 2 therefore says that such note "must contain an unconditional promise or order to pay a sum certain in money," yet section 4053 of said statutes, supra, expressly provides that "an unqualified order or promise to pay is unconditional within the meaning of this chapter (49, supra), though coupled with * * * a statement of the transaction which gives rise to the instrument." Farmers' Bank of Roff v. Nichols, 25 Okla. 547, 106 Pac. 834, 138 Am. St. Rep. 931, 21 Ann. Cas. 1160; Steward v. Commonwealth Nat. Bank, 29 Okla. 754, 119 Pac. 216; Showalter v. Webb, 42 Okla. 297, 141 Pac. 439; Jennings v. Todd, 118 Mo. 296, 24 S. W. 148, 40 Am. St. Rep. 373; McNight v. Parsons, 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665; Malone v.

National Bank of Commerce (Tex. Civ. App.), 162 S. W. 369; Rublee v. Davis, 33 Neb. 779, 51 N. W. 135, 29 Am. St. Rep. 509; Houts v. Sioux City Brassworks, 134 Iowa, 484, 110 N. W. 166; 1 Daniel, Neg. Inst. 740-748; Bank v. Lightner, 74 Kan. 736, 88 Pac. 59. See 7 Century Digest, p. 1259 (Bills and Notes, par. 951).

In Farmers' Bank of Roff v. Nichols, supra, Mr. Justice Hayes said:

"A negotiable promissory note was executed in payment of the premium on some life insurance policies. At the time of the delivery of the note to payee, who was agent for the insurance company, the payee executed a written agreement that if the maker of the note within a stipulated time investigated the company and found it not satisfactory or as represented, the note or the amount thereof in cash would be refunded to the maker by the payee. Held, that the contemporaneous agreement did not constitute the delivery of the note a conditional delivery or deny to the payee the right to transfer the same, and that one who purchased the note in due course of business, before maturity for a valuable consideration, could recover in an action thereon, although at the time of the transfer he had notice of the contemporaneous agreement."

Again in Steward v. Commonwealth National Bank, supra, Mr. Justice Hayes said:

"In an action upon a negotiable promissory note by the indorsee thereof before maturity in due course of business, the maker of the note offered to introduce in evidence a written contract between him and the payee, executed as a consideration for the note, and to show that the payee had violated the contract, and that the consideration of the note failed, before the maturity of the note. The refusal of the court to admit said contract and the rejection of evidence tending to show a violation thereof will not be held reversible error, in the absence of any showing, attempt to show, or statement by the maker that he could show, that the indorsee had notice of such contract and of the failure of the consideration at or before the time he purchased the note."

In Showalter v. Webb, supra, this court recently said:

"The purchaser of a negotiable note before its maturity, in due course of business, in good faith, without notice of imperfections or defects, takes the same freed of the outstanding equities and defenses that might have been asserted against the original payee by the maker. Farmers' Bank v. Nichols, 25 Okla. 547, 106 Pac. 834, 138 Am. St. Rep. 931, 21 Ann. Cas. 1160; Forbes v. First Nat. Bk., 21 Okla. 206, 95 Pac. 785; Morrison v. Farmers' & Merchants' Bank, 9 Okla. 697, 60 Pac. 273; City State Bk. of Hobart v. Pickard, 35 Okla. 243, 129 Pac. 38; Citizens' Sav. Bk. v.

Landis, 37 Okla. 530, 132 Pac. 1101; Mc-Pherrin v. Tittle, 36 Okla. 510, 129 Pac. 721, 44 L. R. A. (N. S.) 395; First State Bank v. Tobin, 39 Okla. 96, 134 Pac. 395; Wood v. Stickle, 36 Okla. 592, 128 Pac. 1082; Western Ex. Bk. v. Coleman, 38 Okla. 178, 132 Pac. 488."

In the case of Jennings v. Todd, supra, Jennings entered into a contract in writing with Potter, Chase & Co., by which he was appointed agent for the sale of an illustrated edition of the New Testament, and they agreed to furnish him 500 books as he might call for them at Kansas City, at $1 each, and reciting that he had given his note for $500 for $1 each on said books. It was charged that the company did not fulfill the contract and that Jennings was induced to make it by fraudulent representations. On the back of this contract was the following indorsement:

"Centralia, Mo., October 23, 1888. The company hereby agrees that the note corresponding to the within contract shall be null and void when the company does not fulfill every point of the contract as signed. C. J. Chase, for Potter, Chase & Co."

It was established by the evidence: (1) That the note was purchased for value before maturity; (2) that the purchaser was aware of the terms of the contract and the indorsement when he purchased. On the question of the good faith of the purchaser the court said:

"In general one will be charged with notice of a fact who has information which should put him upon inquiry, if, by following up such information, with diligence and understanding, the truth could have been ascertained. It is now well settled in this state, however, that the doctrine of notice, as it affects the good faith of transactions generally, does not apply to negotiable commercial paper. 'Both upon principle and authority,' says Wagner, J, 'and from the experience of jurists and commercial men, and the interests of the affairs of business life, it is safe to say that the liberal doctrine which promotes the free circulation of negotiable instruments is the best, and that the good faith of the transaction should be the decisive test of the holder's rights.' Hamilton v. Marks, 63 Mo. 178. Since the decision in that case it has been settled law in this state 'that the consideration of negotiable paper in the hands of a bona fide holder for value before maturity cannot be inquired into. Mala fides alone can open the door to such inquiry. Gross negligence. even, is not sufficient; actual notice of the facts which impeach the validity of the note must be brought home to the holder.' Mayes v. Robinson, 93 Mo. 122 [5 S.. W. 611]."

On the question of the consequences of the knowledge of the character of the transaction

and the indorsement on the back thereof providing that the note should not be paid in the event that the contract was not carried out, the court said:

"We think * * * that no well-considered case can be found in which a collateral contemporaneous agreement, providing that the note should not be paid in the event that an executory contract, which was the consideration of the note, should not be performed, has been allowed to defeat the negotiability of the note in the hands of an indorsee, though he had notice of such agreement. A great part of the improvement of the country, and of business generally, is carried on with money raised by the discount of notes given upon executory contracts, and if the maker could be allowed to defend against such notes, in case of a breach of contract, on the ground that the indorsee, though in other respects bona fide, had knowledge of the transaction out of which the note grew, all confidence in such notes as negotiable paper would be destroyed and such business would be paralyzed. By making and delivering a negotiable note, the maker is held to intend that it may be put in circulation, and that no defenses against it exist. In purchasing such note no inquiry as to the consideration is required. If a failure of consideration occur, the maker must look to the payee for indemnity." Farmers' Bank of Roff v. Nichols, supra; Jennings v. Todd, supra.

In order to defeat the right of the plaintiff to recover there would have to be something more than a possibility that the payee would not perform his executory contract. Forbes v. First Nat. Bank of Enid, 21 Okla. 206, 95 Pac. 785; Clark v. Evans, 66 Fed. 263, 13 C. C. A. 433; City State Bank of Hobart v. Pickard, 35 Okla. 243, 129 Pac. 38; City Savings Bank of Columbus v. Landis, 37 Okla. 530, 132 Pac. 1101; Western Exchange Bank, etc., v. Coleman et al., 38 Okla. 178, 132 Pac. 488; First State Bank v. Tobin, 39 Okla. 96, 134 Pac. 395; Cedar Rapids Nat. Bank v. Bashara, 35 Okla. 482, 135 Pac. 1051; Scandinavian-Am. Bk. v. Johnston, 63 Wash. 187, 115 Pac. 102.

In Forbes v. First National Bank, supra, it was contended that the neglect of the holder of negotiable paper to make inquiry of the payee as to how he obtained the note or draft would establish the bad faith of the holder, and would prevent him from asserting that he was an innocent holder for value, but Justice Hayes holds this not to be the rule and says:

"We think this contention not well founded, for it has become the well-established rule in the federal courts of the Union and in the greater number of state courts that suspicion of defect of title or even gross negligence on the part of the taker of a negotiable instru

ment will not defeat his title. Atlas National Bank v. Holm et al., supra [71 Fed. 489, 19 C. C. A. 94] ; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857 ; Hotchkiss v. National Banks, 21 Wall. 354, 22 L. Ed. 645 ; Clark v. Evans et al., 66 Fed. 263, 13 C. C. A. 433 ; Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934. In Murray v. Lardner, supra, Mr. Justice Swayne, speak'ng for the court, said: 'The possession of such paper carries the title with it to the holder ; "the possession and title are one and inseparable." The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it.' "

In First State Bank v. Tobin, supra, this court, speaking through Commissioner Sharp, said :

"There being no evidence tending to show bad faith on the part of the purchaser in the purchase of a negotiable promissory note before maturity and for a valuable consideration, it is reversible error to overrule a request to peremptorily instruct the jury to return a verdict for the holder thereof in an action on the note, and where no other defense is presented."

In Scandinavian-American Bank v. Johnson, supra, the Supreme Court of the State of Washington, speaking through Mr. Justice Crow, says :

"In an action by an indorsee of a negotiable note, where plaintiff has shown by undisputed evidence that he was a bona fide holder for value, without any circumstances suggesting bad faith, it then devolves on defendant to show that plaintiff was guilty of mala fides."

It follows, in the light of what we have said herein supra, that it was reversible error on the part of the trial court in not giving the peremptory instruction supra, asked for on the part of the plaintiff. Clingan et al v. Bank of Commerce, 37 Okla. 80, 130 Pac. 537 ; Keokuk Falls Imp. Co. v. Kingsland et al., 5 Okla. 32, 47 Pac. 484 ; First State Bank v. Tobin, supra ; Forbes v. First Nat. Bank of Enid, supra ; Showalter v. Webb, supra ; Wood v. Stickle, 36 Okla. 592, 128 Pac. 1082 ; McPherrin v. Tittle, 36 Okla. 510, 129 Pac. 721, 44 L. R. A. (N. S.) 395 ; Conqueror

Trust Co v. Reves Drug Co., 118 Ark. 222, 176 S. W. 119.

The case of the Conqueror Trust Company v. Reves Drug Company, supra, is a case directly in point, the plaintiffs in error being the same in both cases, and, we think, correctly states the law. The opinion is as follows :

"I. The court erred in not directing a verdict in favor of the appellant. The uncontroverted evidence showed that the appellant was an innocent purchaser of the notes sued on. The appellant established the fact by its evidence that it paid a valuable consideration for the notes before their maturity and without any notice of any fraud in their execution or of any defenses that the makers thereof might have against the payee. This shifted the burden to the appellee to show that the appellant was not an innocent purchaser. Pinson v. Cobb, 113 Ark. 28 [166 S. W. 943] ; Bank of Monette v. Hale, 104 Ark. 388 395 [149 S. W. 845]. The appellee did not meet this burden, and there were no circumstances developed in the testimony on behalf of the appellant that would warrant a conclusion that appellant was not an innocent holder of the notes. The circumstances did not even create a suspicion of that kind.

"II. In the absence of any testimony first tending to show that appellant was not an innocent purchaser, the court should not have permitted any testimony as to fraud in the execution of the notes. Bothell v. Fletcher, 94 Ark. 100-103 [125 S. W. 645].

"For the errors indicated, the judgment is reversed, and a judgment is entered here in favor of the appellant for the amount of the note sued on."

It is not necessary to notice other points raised and saved in the court below at the trial, and duly assigned as reversible error on the part of the plaintiff in error, as this cause must be reversed and remanded on the reversible 'error herein discussed' and set forth ; there being no sufficient evidence in the cause to support the verdict of the jury and the judgment of the court thereon.

The cause is reversed and remanded to the lower court, with directions to set aside the verdict and judgment herein and the order overruling the plaintiff's motion for a new trial, and to grant said motion and award the plaintiff a new trial, and to sustain plaintiff's request for judgment upon the evidence in the cause as it stood at the close of the trial, and to render judgment in favor of the plaintiff and against the defendant for the amount sued for, with interest and costs.

By the Court: It is so ordered.