CRANE v. GUARANTY FINANCE CORPORATION.*

[105 So. 485.   No. 24955.]

(Division B.   Oct. 5, 1925.)

BILLS AND NOTES.   *Purchaser of trade acceptances not charged with notice of defect in title because margins indicated clipping from other paper.*

Though stipulations in contract, written on same piece of paper as three trade acceptances, if written in them would have made them nonnegotiable, they being due at intervals of thirty days, so that it must have been contemplated that they would be detached, purchaser of them from person to whom they were executed was not charged with notice under Negotiable Instrument Act, section 56 (Hemingway's Code, section 2634), of defect in title of person negotiating them because they appeared from their margins to have been clipped from another paper.

---

*Headnote 1.   Bills and Notes, 8 C. J., Section 721.
(In Banc.   Oct. 5, 1925.   Suggestion of Error Overruled Oct. 26, 1925.)

APPEAL from circuit court of Lee county.
HON. C. P. LONG, Judge.

Action by the Guaranty Finance Corporation against G. M. Crane.   Judgment for plaintiff, and defendant appeals.   Affirmed.

*George T.* and *Charles S. Mitchell,* for appellant.

. I.   *The instrument as delivered was a non-negotiable instrument under the law.*   See sections 2579, 2583, Hemingway's Code, 8 C. J., Bills and Notes, sec. 220, page 125; 3 R. C. L.—Bills and Notes, 915; 1 Joyce, Defenses to Commercial Paper, page 5.

It can readly be seen from the record in this case that the instruments, or accurately, parts of the original instrument, fall within the above rule. It is uncontradicted that the instruments were an inseparable part of a contract, and, therefore, the entire instrument, and not parts of the instrument, must be considered with reference to the question of its negotiable character.

II. *The negotiability of a note is determined as of the time when it is given and what may happen later will not affect its negotiability, nor will a non-negotiable note become negotiable by the unauthorized act of another person which was not negotiable in its origin.* Peoples *Bank* v. *Porter*, 208 Pac. 200; *Wettlaufer* v. *Baxter*, 26 L. R. A. (N. S.) 807; 8 C. J., sec. 66, page 55.

Thus it can readily be seen that if the instrument when executed was a non-negotiable instrument, the fact that one of the parties to the instrument fraudulently rendered same, by removing part of the instrument, into an apparent negotiable instrument, does not render the instrument negotiable for the instrument must be viewed as of the time when it was executed.

Under the facts of this case the plaintiff was not a holder in due course, as specified in the Negotiable Instruments Act, but was only a mere assignee. There is a broad difference of meaning between the terms "negotiability" and "assignability."

III. *An assignee or transferee of an obligation takes the instrument subject to all the equities and defenses existing between the original parties to the instrument.* 5 C. J., sec. 150, Assignments, page 963; 8 C. J., Bills and Notes, sec. 67, page 55; 3 R. C. L., Bills and Notes, sec. 10, page 837; *Ragan* v. *Gray, et al.*, 27 Miss. 645; *Bank* v. *Stanton*, 17 A. L. R. 857.

IV. *The alteration of the instruments as admitted was material and fraudulent; material because it changed the character of the instrument, and fraudulent as it was*

*made with the intention to deceive, and without the au-thority of the maker of same.* 1 Joyce, Defenses to Commercial Paper, 375; 2 C. J., Alteration of Instruments, sec. 56, page 1206; 1 R. C. L., Alteration of Instruments, sec. 9, page 976.

V. *No recovery could be had by plaintiff upon the parts of the instrument in this case and the fact that he was a bona-fide holder for value without notice does not affect the rule.* 2 C. J., Alteration of Instruments, sec. 6, page 1176; 1 R. C. L., sec. 26, page 990.; *Simmons* v. *Atkinson and Lampton Company,* 69 Miss. 862; *Bank* v. *Merkel,* 63 So. (Miss.) 350; *Bank* v. *Cole,* 71 So. (Miss.) 260; *Rochford* v. *Magee,* 61 L. R. A. 336.

In conclusion, since the instrument originally and fundamentally was a non-negotiable instrument, within the meaning of the Negotiable Instruments Act, the fact that it was altered into an apparently negotiable instrument does not affect its original character; since originally it was a non-negotiable instrument that of which the holder is a mere assignee and not a holder in due course; since the holder is a mere assignee, he received the instrument, or parts of the instrument, subject to all the defenses that the maker would have had against the original payee; that since the instrument was fraudulently and materially altered it is vitiated even in the hands of a *bona-fide* purchaser for value without notice. Therefore, no action *ex contractu* should have been permitted to have been maintained upon same, and the court erred in refusing the affirmative charge requested by defendant, and erred in giving the affirmative charge for plaintiff.

But conceding, for the sake of argument only, that the instrument was a negotiable instrument, and that the plaintiff was a holder in due course, and that the Negotiable Instruments Act applied; yet, under the undisputed evidence in the case there has been a fraudulent and material alteration of the instrument, and a holder

in due course, under such facts, could only recover according to the original tenor of the instrument.

VI. *Where an instrument has been materially altered, if subject to the Negotiable Instruments Act, in the hands of a holder in due course, without notice, it is payable according to its original tenor.* Section 2702, Hemingway's Code.

VII. *The original tenor of the instrument includes all conditions and stipulations that were a part of the instrument and the effect of the instrument is to be gathered from them as a part of same.* Bigelow, Bills and Notes, (2 Ed.), 221; 1 Joyce, Defenses to Commercial Paper, 341; *Bothell* v. *Schweitzer,* 22 L. R. A. (N. S.) 263.

In conclusion, even if this was a negotiable instrument payment of it can only be enforced according to its original tenor, because it is admitted that it was materially altered. The original tenor, or the intention of the original parties to the instrument, was that the acceptances should be paid upon the fulfillment of certain conditions set forth in a contract on the same sheet of paper as the instruments were, and since the conditions were never fulfilled, the instruments were not payable.

*Boggan & Leake,* for appellee.

It is admitted by the appellant that each of the acceptances were complete, signed by appellant, and payable at the Bank of Tupelo, Tupelo, Mississippi, and the only contention of the appellant, is, that these acceptances, at the time they were executed, were attached to a contract of appellant with Lawrence Phonograph Corporation, and that these acceptances have been clipped from the contract, and for that reason the acceptances are not valid in the hands of a *bona-fide* pur-

chaser for value. What is required in order to be a holder in due course is set out fully in section 2630, Hemingway's Code.

These acceptances being payable at the Bank of Tupelo, are governed by the negotiable instrument laws of Mississippi. There is nothing indicating that appellee knew anything of the contract referred to by appellant. The proof shows that it had no knowledge of anything having been attached to the acceptances, or of anything that constitutes notice of defect: Section 2634, Hemingway's Code.

Hemingway's Code, section 2635, defines the rights of holder in due course. The effect of the alteration of the instrument is fixed by statute in section 2702, Hemingway's Code. What constitutes a material alteration is given in section 2703, Hemingway's Code.

The alteration complained of by the appellant, if it should be termed an alteration, does not entitle the appellant to any relief whatever, for we submit that each of these acceptances meet the requirements of the negoiable instrument law of this state, and that our contention is supported by the following authorities: *Despres, Bridges & Noel* v. *Hough Drug Co.*, 123 Miss. 598, 86 Co. 359; *Federal Discount Corporation* v. *Alexander Hdwe Co.*, 133 Miss. 218, 97 So. 579; *Currie-McGraw Co.* v. *H. & J. Friedman*, 100 So. 273.

The fact that these acceptances show that they had been cut does not indicate that appellee had any knowledge or cause to suspect that there was a contract between the Lawrence Phonograph Corporation and G. M. Crane attached to them.

We think as between the appellant and appellee there is no question but that appellant should pay these acceptances, as he put the Lawrence Phonograph Corporation lawfully in possession of negotiable paper that is now held by appellee as a *bona-fide* purchaser, and appellant is estopped by his negligence from making the defense he is offering for the non-payment of these acceptances.

The court's attention in support of this proposition, in addition to the Mississippi cases herein cited, is called to 3 R. C. L., 997 and 998, Bills and Notes, pars. 207-208.

Argued orally by *Chas. S. Mitchell,* for appellant

ANDERSON, J., delivered the opinion of the court.

The appellee, Guaranty Finance Corporation, a Missouri corporation, brought this action in the circuit court of Lee county against appellant, G. M. Crane, on three trade acceptances of one hundred and forty-five dollars each, and recovered judgment for the amount sued for with interest, from which appellant prosecutes this appeal

At the conclusion of the evidence, at the request of the appellee, the court directed a verdict in its favor. The propriety of that action of the court is the only question involved. That question turns upon whether the trade acceptances which were the basis of the action were negotiable instruments under our Uniform Negotiable Instruments Act. Chapter 244, Laws of 1916 (Hemingway's Code, sections 2579-2774, inclusive). They were drawn by the Lawrence Phonograph Corporation of St. Louis Mo., on appellant, and by the latter accepted. They were dated March 24, 1922, and payable respectively thirty, sixty, and ninety days after date. Appellee became a *bona-fide* holder of the acceptances for value in due course before their maturity. Appellant bought some phonographs from Lawrence Phonograph Corporation, and executed the trade acceptances involved for the purchase money of the phonographs. At the same time the acceptances were executed by appellant a contract in writing was entered into between appellant and Lawrence Phonograph Corporation containing stipulations to be performed by the latter, which, if written in the face of the acceptances, would have rendered them non-negotiable. That is conceded to be true by appellee.

The acceptances and contract were, before execution, filled out on a printed form, all on one sheet of paper. There were no perforated lines between them. But each acceptance was complete within itself. There was no reference of any kind in the acceptances to the contract or its provisions. They were so printed on the one sheet as that they could be separated by clipping so that each would be complete within itself. That was done by Lawrence Phonograph Corporation, and the acceptances were delivered to appellee before maturity for value without notice.

Appellant's position is that in view of the facts stated the acceptances and the contract together constituted one contract; that the contract is to be read into each of the acceptances; that when executed the acceptances were non-negotiable, and therefore could never become such; that the act of Lawrence Phonograph Corporation in clipping the acceptances from the contract was a material alteration of the former, and did not render them negotiable.

Appellee's position is that it was necessarily intended by the parties that the acceptances should be detached from the contract and become negotiable instruments in the channels of trade.

Section 57 of the Negotiable Instruments Act (Chapter 244, Laws of 1916; Hemingway's Code, section 2635) defines a holder in due course as one who holds the instrument "free from any defect of title of prior parties, and free from defenses available to prior parties among themselves," and provides that the holder in due course may enforce payment of the instrument for the full amount against all parties liable thereon. And section 56 of said Act (Hemingway's Code section 2634,) provides that to constitute notice of an infirmity or defect in the title of the person negotiating the instrument to the person to whom it is negotiated the latter "must have had actual knowledge of the infirmity or defect or knowledge

of such facts that his action in taking the instrument amounted to bad faith.''

The title of a person who negotiates an instrument under section 55 of the Act (Hemingway's Code, section 2633), is defective when he obtained the instrument or signature thereto by fraud, duress, force of fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under circumstances that amount to fraud. There is no claim that appellee had actual knowledge of the fact that the acceptances were non-negotiable instruments before detached. Appellant claims, however that appellee had knowledge of such facts as that his action in taking the instruments amounted to bad faith. The only fact shown that appellee had knowledge of what by any process of reasoning whatever could be claimed to have been such notice to appellee when it took the acceptances is the fact that they appeared from their margins to have been clipped from another paper. We hold that that was insufficient. We are of the opinion that although it was not expressly understood at the time of the execution of the acceptances and contract that the former were to be detached by Lawrence Phonograph Corporation and become negotiable instruments in the ordinary course of trade, from the very nature of the transaction that was the purpose and intent of the parties. The acceptances were due thirty days apart; they had to be detached and separated in order to be collected in the usual way and through the ordinary channels. The parties could not in reason have intended that the acceptances and the contract to which they were attached should continue in that form. If they had continued in their original form, whenever one of the acceptances fell due all of them, including the contract to which they were attached, would have been required to be forwarded through the usual channels for collection of only one. It was held in *Conqueror Trust Co* v. *Simmon,* 62 Okl. 252, 162 P. 1098, that where negotiable promissory notes were attached to a contract

by perforations for the purpose of being detached it was
not a material alteration to detach such notes. And it
was held in *Pratt* v. *Rounds,* 160 Ky. 358, 169 S. W. 848,
that knowledge by a holder of a negotiable instrument
in due course that the payee had detached the note from
a contract and that the contract authorized the payee
to do this did not effect the purchaser even with know-
ledge of a fraud practiced by the payee when the note
was given. These cases, it is true, are not exactly in
point on their facts; they are referred to as examples of
how jealously the rights of a holder in due course of a
negotiable instrument are protected. Appellant cites
Bigelow on Bills and Notes (2 Ed.), .221, to the effect
that marginal terms, conditions, and stipulations which
are intended to be a part of the contract are to be treated
as inseparable from the writing on which the signature
is given, and that there is no dictinction between the al-
teration of the body of the instrument and detaching
therefrom marginal agreements. And 1 Joyce, Defenses
to Commercial Paper, page 341, is referred to, where-
in it is stated that where a written agreement mod-
ifying the terms of an accepted bill of exchange has
been unlawfully detached, an innocent holder of a bill in
due course may recover "according to the import of the
entire contract."

We do not think the principles declared in those au-
thorities are controlling under the facts in this case. The
contract in question cannot be said to have been a mar-
ginal term, condition, or stipulation intended to be a
part of the acceptances. And it cannot be said that
the contract was unlawfully detached from the accept-
ances. On the contrary, as we have stated, looking at
the transaction from its four corners, it can mean nothing
else than that appellant and Lawrence Phonograph Cor-
poration contemplated and intended that whenever it be-
came necessary in the ordinary channels of trade to de-
tach the contract from the acceptances that it should be
done and the acceptances stand alone on the provisions

in their face. Perforations between the contract and the acceptances were not necessary. Each was complete in itself. There was no reference whatever in the acceptances to the contract. And furthermore, appellee, by executing the contract and acceptances in that form, put it in the power of Lawrence Phonograph Corporation to do exactly what it did, namely, detach the acceptances and negotiate them to a *bona-fide* holder for value before maturity. Which under the circumstances should suffer loss, the former or the latter? We think the former.

*Affirmed.*