JERRY HURLEY, Appellant, v. BANKERS LIFE COMPANY, Appellee.

INSURANCE:   Accident Insurance—"Total, Permanent, and Incurable
    Disability."   An insured who has lost a leg, and will be compelled
    permanently to go upon crutches, but who is still able to perform
    some items of labor in and about the only profession for which he
    has been fitted,—farming,—is not within the provision of a policy
    of insurance which grants indemnity only in case the insured is
    "*totally, permanently, and incurably disabled*" and is "*thereby pre-
    vented permanently, continuously, and wholly from performing any
    work or following any occupation for compensation or profit.*"

    PRESTON, DE GRAFF, and VERMILION, JJ., specially concur, on stated
    ground.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

JUNE 28, 1924.

REHEARING DENIED DECEMBER 11, 1924.

ACTION on a policy of insurance providing for payments in
monthly installments in case of total, permanent, and incurable
disability.  The trial court directed a verdict for the defendant,
and the plaintiff appeals.—*Affirmed.*

*William S. Hart,* for appellant.

*R. B. Alberson, W. S. Ayres,* and *Murphy & Gleason,* for
appellee.

FAVILLE, J.—The policy of insurance contained the follow-
ing provision:
    "After the premiums have been paid for at least one full
year and provided no premium is in default, if the insured, be-
fore attaining the age of sixty years, becomes totally, perma-
nently and incurably disabled as a result of accident or disease
(not due to any cause or condition existing at the time of appli-
cation for this agreement) and is thereby prevented perma-

nently, continuously and wholly from performing any work or following any occupation for compensation or profit, the company will waive payment of premiums thereafter becoming due under said policy which shall be continued in force for the same amount and with the same cash surrender and loan values. (except as hereinafter provided) as if such premiums had been paid, and beginning one year after receipt of due proof of such disability, if the policy is in full force, the company will pay the policy to the insured as a monthly income for ten years, dividing the face of the policy into 120 equal monthly installments; the policy to be returned to the company for endorsement thereon of each payment.''

Appellant is a single man, thirty-eight years of age. He is a farmer, and has never had any other occupation. He has no education beyond that acquired in the public schools through the third grade. In July, 1918, he was kicked on the leg by a horse. Three amputations were necessary, following the injury, resulting in leaving a stump of the leg five inches in length; and the bone is so near the end of the stump that an artificial limb could not be used, and appellant is compelled to use crutches. Appellant knows no business except farming. He can drive a team, if it is harnessed and hitched for him, and can do some chores on the farm, such as any man with one leg could do.

We meet at once the question in the case as to whether or not appellant became ''totally, permanently, and incurably disabled,'' and is ''thereby prevented permanently, continuously, and wholly from performing any work or following any occupation for compensation or profit.''

Many cases have been before the courts, involving construction of contracts of this character, which, however, are not always identical in phraseology. The cases fall quite readily into two general classes: Those wherein the policy provides for indemnity if the insured is disabled from transacting the duties pertaining to the occupation in which he is then engaged; and those wherein the policy provides for indemnity if the insured is disabled from performing any work or following any occupation. This case belongs to the latter class.

We shall consider our own decisions first.

In *Lyon v. Railway Passenger Assur. Co.*, 46 Iowa 631, the policy provided:

"The Railway Passengers' Assurance Company, of Hartford, Conn., will indemnify the assured under this contract, in the sum of fifteen dollars per week, against loss of time, not exceeding twenty-six consecutive weeks from the date of the accident under which claim is made, while totally disabled and prevented from the transaction of all kinds of business, solely by reason of bodily injuries effected through outward and accidental violence."

On appeal, we considered two instructions given upon the trial. We quote at length from the opinion.

"The court gave the following instructions: '4. The policy provides that the defendant will be entitled to recover for injuries resulting from accidents only while the insured was totally disabled, and prevented from the transaction of all kinds of business. But this language must be construed in a practical sense, and means inability to follow any occupation, business, or pursuit in the usual way. Though he may have been able to do some parts of the accustomed work thereof, he may yet recover so long as he cannot to some extent do all parts, and engage in all such employments. The fact that he may do some light parts of the work, when he cannot engage in the work itself, to any practical extent, will not prevent a recovery.' '5. The words, "all kinds of business" should receive a practical construction and with reference to the party insured, and if he was qualified to engage in any business which he could do under the injury, then it would be his duty under the contract so to do, but the fact that there may be some business or occupation in which he could engage, would not prevent a recovery unless it was an occupation or business which he was qualified to engage in as an occupation, and transact in the usual way.' These instructions are, it seems to us, clearly erroneous. The parties must be bound by the terms of their contract. The contract of insurance provides that the defendant will indemnify the assured against loss of time while *totally disabled and prevented* from the transaction of *all kinds* of business, solely by reason

of bodily injuries effected through outward and accidental violence. The fourth instruction construes the contract to mean something entirely different. The jury are directed that plaintiff may recover though he may be able to do some parts of the accustomed work pertaining to his business, so long as he cannot, to some extent, do all parts and engage in all the employments thereof. Almost total soundness and ability, instead of total disability, is made the condition of plaintiff's right to recover, and of defendant's liability. The plaintiff is a carpenter. If he was simply disabled from going upon a four-story building to put on the roof, and could do everything else pertaining to his trade, he would, under this instruction, be entitled to recover fifteen dollars a week, during the period of such disability. This is not the proper construction of the agreement. It interpolates into it terms and conditions upon which the parties never agreed, and attaches to the words employed a meaning of which they are not susceptible. The fifth instruction is equally erroneous. The contract of insurance binds defendant to indemnify plaintiff for loss of time while totally disabled, and prevented from the transaction of *all kinds of business*. The court tells the jury that this does not mean what it plainly says, but that defendant will indemnify plaintiff for loss of time while disabled, and prevented from the transaction of any business in which he was *qualified to engage*. Under this instruction the defendant's liability is governed by the plaintiff's versatility. If the plaintiff is skilled in but one business and can pursue but one employment, and is disabled from pursuing that, he may recover; but if he has greater skill, and can turn his attention to other pursuits, he cannot recover unless he is disabled from engaging in any employment for which he is qualified. The parties have not incorporated any such condition in the contract. There is no reason nor justification for wresting from the language employed its natural signification, and placing upon it a construction which substitutes for the contract which the parties have made one of entirely different signification, and one imposing upon the defendant a greatly enlarged liability. The language of the parties is plain, unambiguous, and needs no construction. It provides that defendant shall be

liable for loss occasioned by being totally disabled from all kinds of business. Effect should be given to this language. It should be understood to mean what it says. It cannot be claimed that it means that defendant will indemnify on account of loss sustained by being *partially* disabled from *some* kinds of business: and yet this is the construction which the two instructions we have been considering place upon it.''

In *Pennington v. Pacific Mut. Life Ins. Co.*, 85 Iowa 468, the policy provided for indemnity for ''the total loss of such business time as may result from such injuries.'' The insured was a railroad employee, and insured as such. We said:

''The reference to 'the loss of such business time' has plain reference to the occupation of the insured, and the loss of time in such business means the loss of time in the business of a fireman. It has no reference to the whole range of business pursuits.''

We held that the limitation was not so comprehensive as in the *Lyon* case.

In *McKinley v. Bankers Acc. Ins. Co.*, 106 Iowa 81, we considered a policy that provided for indemnity if the insured was disabled from transacting any of the duties pertaining to his occupation as merchant. It is obvious that the *Lyon* case belongs to the class where the reference is to any form of occupation, and the *McKinley* case to the class where the reference is to the particular occupation of the insured.

In *Marren v. Fidelity & Cas. Co.*, 188 Iowa 363, we considered a policy where the indemnity was against total disability ''that prevents the assured from performing any and every kind of duty pertaining to his occupation.'' We recognized that the *Lyon* case had been ''sharply assailed in many jurisdictions,'' but that it was clearly distinguishable from the case under consideration.

It will thus be seen that we have had occasion to deal with both classes of cases. We cannot attempt a review of all the decisions that bear on the question. The *Lyon* case states one view of the question. The opposite view is well expressed in *Foglesong v. Modern Brotherhood*, 121 Mo. App. 548, wherein the court considered a contract providing for indemnity for

"permanent and total disability * * * which renders him unable to carry on or conduct any vocation or calling." The court said:

"Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoe strings or lead pencils, or follow some similar calling, in which instances, under the rule invoked, there would be no disability, within the meaning of the policy. In our opinion, such was not within the contemplation of the parties."

As sustaining generally the rule of the *Lyon* case, see *Buckner v. Jefferson Standard L. Ins. Co.*, 172 N. C. 762 (90 S. E. 897); *Rhodes v. Railway Pas. Ins. Co.*, 5 Lans. (N. Y.) 71, 77; *Hutchinson v. Supreme Tent K. of M.*, 68 Hun 355 (22 N. Y. Supp. 801); *Whitton v. American Nat. Ins. Co.*, 17 Ga. App. 525 (87 S. E. 827); *Parten v. Jefferson Standard L. Ins. Co.*, 30 Ga. App. 245 (117 S. E. 772); *Albert v. Order of Chosen Friends*, 34 Fed. 721; *Knights of Maccabees v. Cox*, 25 Tex. Civ. App. 366; *B. & O. Employees' Relief Assn. v. Post*, 122 Pa. St. 579.

In a number of the foregoing cases, the *Lyon* case is cited and approved.

On the other hand, many courts have refused to follow the rule of the *Lyon* case, and in various forms have followed the reasoning expressed in the *Foglesong* case. Of such cases are the following: *Monahan v. Supreme Lodge*, 88 Minn. 224; *James v. United States Cas. Co.*, 113 Mo. App. 622; *Rathbun v. Globe Indemnity Co.*, 107 Neb. 18; *Lobdill v. Laboring Men's Mut. Aid Assn.*, 69 Minn. 14; *Davis v. Midland Cas. Co.*, 190 Ill. App. 338; *Wall v. Continental Cas. Co.*, 111 Mo. App. 504; *Grand Lodge v. Orrell*, 206 Ill. 208; *Brotherhood v. Aday*, 97 Ark. 425; *Industrial Mut. Indem. Co. v. Hawkins*, 94 Ark. 417.

Others holding to a similar effect might be cited. In a number of these cases the *Lyon* case is criticized.

The rule that seems to be emphasized by some of the courts is that the question as to whether or not the insured is totally disabled, within the meaning of the contract, is a question for the jury, under the particular facts of each case. See *United States Cas. Co. v. Hanson,* 20 Colo. App. 393; *Hohn v. Interstate Cas. Co.,* 115 Mich. 79; *Taylor v. Southern States L. Ins. Co.,* 106 S. C. 356; *Starling v. Supreme Council,* 108 Mich. 440 (66 N. W. 340).

It must be conceded that the majority of the courts of the country are not in line with our conclusion in the *Lyon* case.

The *Lyon* case was decided in 1877. Contracts of insurance in this state have presumably been entered into in view of that decision since that time. The effect of the holding can easily be obviated by a change in the phraseology of the contract.

We are not disposed to now overrule the *Lyon* case or depart from the rule therein announced. If it were a case of first impression, we would find much persuasive argument in appellant's contention. The parties have a right to choose the terms of their contract; and while such a contract must be construed liberally in favor of the insured, we cannot substitute other terms for those that the parties have seen fit to adopt.

Under the evidence in this case, it did not appear that appellant was prevented from "permanently, continuously, and wholly performing any work or following any occupation for compensation or profit," within the meaning of the policy, and as contemplated by the parties thereto.

It follows that the court did not err in sustaining appellee's motion for a directed verdict, and the judgment is, therefore,— *Affirmed.*

ARTHUR, C. J., EVANS and STEVENS, JJ., concur.

VERMILION, J. (specially concurring). I cannot subscribe to the strict doctrine of the *Lyon* case, but am of the opinion that the appellant's injury was clearly not such as to entitle

him to recover under the terms of the policy, and that the motion to direct a verdict was rightly sustained.

PRESTON and DE GRAFF, JJ., join in this special concurrence.