JULIA CORSAUT, Appellee, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

INSURANCE:  Forfeiture of Policy—Nonpayment of Premiums—Incapacity Excusing Payment. Evidence reviewed, and held insufficient to establish that an insured was "wholly and permanently" disabled, within the meaning of a policy which excused nonpayment of the annual premium in case of such incapacity.

INSURANCE:  Forfeiture of Policy—Nonpayment of Premiums—Waiver—Insufficient Evidence. The plea that the nonpayment of premiums on a policy was waived because the policy provided for such waiver in case the insured became "wholly and permanently disabled". is manifestly not established by proving that the insured was only *partially* disabled.

Headnote 1:  37 C. J. p. 638.   Headnote 2:  37 C. J. p. 484 (Anno.)

Headnote 1:  12 L. R. A. (N. S.) 319; 15 A. L. R. 318; 14 R. C. L. 987.

*Appeal from Black Hawk District Court.*—GEORGE W. WOOD, Judge.

DECEMBER 14, 1926.

REHEARING DENIED APRIL 7, 1927.

Action upon an insurance policy. The cause was submitted to a jury, which returned a verdict in favor of the plaintiff, and the defendant appeals.—*Reversed.*

*Pike, Sias, Zimmerman & Frank,* for appellant.

*George W. Dawson* and *Sager & Sweet,* for appellee.

PER CURIAM.—On January 30, 1922, the appellant issued its policy of insurance upon the life of Dr. James Calvin Corsaut. The insured died on the 31st day of December, 1923. The appellee is the wife of said decedent, and is the beneficiary named in said policy of insurance. The premium on said insurance policy was due on the 19th day of January of each year. The policy contained the following provision:

"If the insured becomes wholly and permanently disabled before age 60, the society will waive subsequent premiums payable upon this policy, subject to the terms and conditions contained on the third page hereof."

The petition alleges that, at the time the premium became due, to wit, on January 19, 1923, and for some time prior thereto, and thereafter until the date of the death of the insured, he was totally and permanently disabled by disease, and was totally insane and incompetent to transact any business or cause same to be transacted by anyone in his behalf. It is undisputed in the evidence that the premium due on January 19, 1923, was never paid. The burden rested upon the appellee, in order to entitle her to recover, to establish that the insured became "wholly and permanently disabled" prior to January 19, 1923. We quite recently had occasion to examine a policy of insurance containing a similar provision, in *Hurley v. Bankers Life Co.,* 198 Iowa 1129. In the policy under consideration in said case it was provided that:

1. INSURANCE: forfeiture of policy: nonpayment of premiums: incapacity excusing payment.

"* * * if the insured, before attaining the age of sixty years, becomes totally, permanently and incurably disabled as a result of accident or disease (not due to any cause or condition existing at the time of application for this agreement) and is thereby prevented permanently, continuously, and wholly from performing any work or following any occupation for compensation or profit, the company will waive payment of premiums thereafter becoming due under said policy," etc.

In said cause we were called upon to construe the effect of the words "totally, permanently, and incurably disabled * * *

and is thereby prevented permanently, continuously, and wholly from performing any work or following any occupation for compensation or profit." We reviewed the authorities at length upon the question of the construction of policies of this character, and adhered to the pronouncement heretofore made by us in *Lyon v. Railway Passenger Assur. Co.*, 46 Iowa 631. We held that, under the terms and conditions of a policy such as the one in the case at bar, where the condition that avoided the payment of the premium was that the insured be "prevented permanently, continuously and wholly from performing any work or following any occupation for compensation or profit," the evidence must show that such a situation in fact existed, in order to entitle the beneficiary to recover under the policy.

It may be conceded that the question of whether or not an insured had become "wholly and permanently disabled" might, under many circumstances, very properly be one for the determination of the jury. In the instant case, the appellant challenges the sufficiency of the evidence to carry the case to the jury on this question. It is impossible for us to review every incident and item detailed in the record, which, however, we have read and examined with great care. It appears that the insured was educated at the State University of Iowa, and was married to the appellee in January, 1902. He practiced for some time at the town of Dike, and later engaged in the practice of his profession at Cedar Falls. He evidently had a considerable practice. His wife testified that, in November, 1922, she noticed that he had despondent spells; that he would cry, and had spells of laughing, and could not remember people; that he did not recognize his best friends; that he would walk the floor, and hold his head, and wonder what was the matter with him; and that, in making calls in town, he would sometimes return home and say that he could not find the place where he would want to go. He complained of pressure in his head, and that he could not remember. She testified that he spent his money recklessly, and had bills which he claimed had been paid, and it was found afterward that they had not been. She testified that the insured paid his taxes by writing checks, and wrote checks several times when he had no funds in the bank, and when she spoke to him about it, he said he thought he had plenty of money in the bank. On January 10, 1923, the appellee took the insured to Iowa City

for examination. She selected the route and purchased the tickets. The insured was restless on the train; walked from one end of the car to the other, smoking and walking. He was examined by a doctor at the Psychopathic Hospital in Iowa City, but the appellee was not present at the examination. The insured informed his wife that the doctor had told him that he guessed there was nothing the matter with him, and the insured seemed happy to think there was nothing wrong with him, and wanted to go home, and was in a very happy state of mind on the way home. This was approximately at the time the premium was due. The appellee and the insured returned to Iowa City sometime in February following. The insured was worse at that time. The appellee left the insured at Iowa City on this trip, and he returned home unattended. The appellee testified that, in the fall of 1922, she had known the insured to come home when he had been on a case when he thought he had made a mistake, or feared his judgment was wrong, and cry about it. He became irritable toward his family, which consisted of his wife and two children, 19 and 20 years of age. The insured went with the appellee to the bank, to talk over his financial affairs. The appellee testified that she went to the insured's office very seldom during these times, and did not know whether he treated patients during the months from January to June, 1923.

A doctor testified that he had been acquainted with the insured for some 11 or 12 years; that he occupied a suite of rooms with the insured, and they had the same reception room and office girl, and that this arrangement continued until about four or five months before the insured's death; that he saw the insured probably every day, and they did some work together; that, during the fall and winter of 1922-23, he noticed that the insured acted differently; that he had despondent spells, talked about not feeling well, and would lie in his office for several hours at a time, and on other occasions he would be too enthusiastic,—wanted to buy things; that he duplicated orders; that he assisted in performing an operation with the witness and another physician, by administering the anæsthetic, and gave more than was necessary, and they were compelled to resort to artificial respiration to restore the patient. The witness expressed the opinion that the insured was of unsound mind in January, 1923. On cross-examination, this witness testified that the insured was

engaged in the practice of his profession, treating patients during the winter and spring of 1923. He testified that in his judgment the insured was afflicted with paresis. Another physician testified that he first met the insured in 1915, and had an adjoining office, and they had a common reception room, and that he saw him nearly every day. About September, 1922, he noticed that he acted differently than previously. He would open his door and peek out, watching patients that came into the witness's room; that he had spells of depression, and other spells quite the opposite; that this witness was present at the same operation testified to by the other physician, when the insured administered an anæsthetic in a case of amputation and the patient was over-anæsthetized; that the amputation was stopped, and the patient was restored. This was on December 26, 1922. The witness expressed the opinion that, in January, 1923, the insured was of unsound mind. On cross-examination, he testified that, during the months of January to June, 1923, inclusive, he saw the insured at his office part of the time, and during this time he was treating patients; that he was not in the office after June, 1923, but that the insured was treating patients up until that time; that he could not give any idea of the number of patients he treated during these months.

A banker testified that, about the early part of 1922, the insured had overdrafts in his bank; that he asked insured to make a financial statement, and the insured did so; but that the banker "could not make head or tail out of it," and put it in the waste basket. Insured seemed to want to avoid meeting the banker, if he could, and the witness expressed the opinion that the insured was of unsound mind in January, 1923. On cross-examination, he testified that he knew that the insured did transact business after January 1, 1923, up to May, 1923.

Another physician testified that the decedent told him that he had been playing golf, and had made a golf score which the witness testified was an impossible one. The witness expressed the opinion that the insured was of unsound mind at that time.

The foregoing is a general outline of the testimony in behalf of the appellee. The appellant's motion for a directed verdict having been overruled, the appellant offered testimony, and, at the close of all of the evidence, submitted a motion for directed verdict. The appellant produced as a witness the office

girl of the insured, who testified that her duties were to take care of the rooms, keep track of the people that came in, and enter them upon the book kept by the insured; that she made these entries with reference to the insured's patients from what he told her, or from entries he made on his desk pad. The book was produced, and it showed a record of the charges and credits against certain parties as the patients of the insured from December 31, 1922, to May 23, 1923. The witness testified that she entered these items, relying upon the insured's desk pad, and when she asked him, and in some cases where she knew the patients; that she did not go into the private office when patients were being examined, but sometimes they would come out and talk with her, with bottles in their hands; and that she knew they had received medicine. On cross-examination, she testified that there were some entries in the ledger produced that she was satisfied did not represent actual transactions. She cited an instance where a statement was sent where a charge was made, and it appeared that the patient had paid the insured. There were also times when the office girl did not allow people to see the insured, but found entries on the pad against people, whether they had been there or not. She also said that she would not vouch under oath for all of the items on the record, and that it was a fact that the number of people that actually went into the doctor's private office was out of proportion to the number of entries that appeared in the book. She testified to the insured's being nervous in the manner in which he acted about the office. It appeared that, on the 19th day of June, 1923, the insured examined a party residing in Cedar Falls, for an insurance policy in the appellant company. The answers to the questions in the medical examiner's report appear to have been made by the decedent, and he signed the same. A check was sent to him for the fee on June 25, 1923, which appears to have been indorsed by the decedent and paid. Without going more minutely into detail, the foregoing is a general outline of the evidence in behalf of the appellant.

The question is whether, upon this record, the court erred in submitting the case to the jury, or whether the court should have directed a verdict in behalf of the appellant. The words in

2. INSURANCE: · forfeiture of policy: nonpayment of premiums: waiver: insufficient evidence.

the policy are, in practical effect, the same as the words in the policy in the *Hurley* case. There was no provision for "partial disability," or for disability that should incapacitate one from performing his "usual occupation." Cases with such provisions are cited in the *Hurley* case, and the distinction pointed out. As in the *Hurley* case, the policy in the instant case provides but one condition under which premiums are waived by the company, and that is, "if the insured becomes *wholly and permanently* disabled before age sixty." We cannot give to these words any other and different interpretation than their usual and ordinary meaning. "Wholly and permanently disabled" cannot logically be construed to mean partially disabled, or disabled to a limited degree, or disabled from doing certain things while able to do others. Under the record, it cannot be said that this case presents an instance of an insured who is "wholly and permanently disabled." Undoubtedly, the insured was affected with a mental breakdown, and this began to be noticeable in the year 1922; but, at or about the time that the premium in question was due, and for several months thereafter, the insured was carrying on the practice of his profession, was treating patients, and, so far as the record discloses, without making mistakes in the very delicate and, in a sense, dangerous business of administering medicine. The only specific instance in the record looking toward a lack of judgment in this regard is the one instance where, as late as December, 1922, physicians closely acquainted with him evidently deemed him competent to undertake the delicate task of administering an anæsthetic, and it appears that he administered too much of the anæsthetic, and it became necessary to resuscitate the patient. In the light of common knowledge, it cannot be said that this incident is evidence of "total and permanent disability." The number of patients shown by the books of the physician to have been treated during the period from January to June, 1923, runs into the hundreds. According to the testimony of the office girl, some of these entries were erroneous, and the physician doubtless made charges against people whom he did not treat. He was forgetful and negligent, and subject to spells of exhilaration and of depression; but the undisputed fact remains that, during this entire period of time, he was in regular attendance at his

office, and was continuously engaged, more or less, in treating patients, administering medicine, and practicing his profession. In June of 1923, he made an examination of an applicant for insurance, filling out the somewhat extensive blank form required for such examination in detail, and received a check therefor, and indorsed the same. Without reviewing the record further, we are constrained to hold that a verdict to the effect that during this period of time the insured was "wholly and permanently disabled," is contrary to the record in the case, and cannot be permitted to stand. The trial court should have sustained the appellant's motion for a directed verdict, made at the close of all of the testimony  No other conclusion is warranted under the record in this case, under the terms of the policy in question and the rules of law applicable thereto, as heretofore announced by this court. The appellee was charged with the burden of establishing that the insured was "wholly and permanently disabled." In this the appellee failed.

In view of the conclusion as herein announced, the other errors urged by the appellant require no consideration. The judgment of the district court must be, and it is,—*Reversed.*