ARCHIE E. GARDEN, Appellee, v. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY of Boston, Appellant.

No. 41938.

APRIL 4, 1934.

REHEARING DENIED DECEMBER 13, 1934.

Devitt, Eichhorn & Devitt, for appellant.

McCoy & McCoy, for appellee.

ANDERSON, J.—On September 16, 1929, the defendant-appellant, New England Mutual Life Insurance Company, issued to the plaintiff-appellee, Archie E. Garden, an ordinary life insurance policy for $10,000 in consideration of the payment of an annual premium of $239. There was attached to and made a part of said policy a supplemental agreement for income and waiver of premiums during total and permanent disability, and for double indemnity in case of death from accident. This supplemental agreement was issued by the company and made a part of the contract in consideration of the payment of an additional annual premium of $26. This supplemental agreement is the basis of this action and provides, among other things, as follows:

"Upon receipt of due proof that the Insured has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain, or profit, and that such disability has occurred while the Policy and this Agreement are in full force and prior to the policy anniversary nearest his sixty-fifth birthday, and has existed for a period of ninety days, the Company will pay to the Insured a Monthly Income of One Hundred Dollars, and will also waive the payment of every premium thereafter due upon the Policy and this Agreement, subject to the conditions herein set forth..

"The Company shall have the right at any time or times during the first year after receipt of proof of such disability, and thereafter not oftener than once a year, to require satisfactory proof of the continuance of total disability. Upon failure to furnish such proof, or if it shall appear at any time that the Insured is no longer totally and permanently disabled, this Agreement shall terminate, no further income will be paid nor premium waived, and all premiums thereafter due under the Policy shall be payable in conformity with its terms."

The record shows without dispute that the plaintiff was stricken on September 5, 1931, with infectious arthritis of the right knee; that he was confined to a hospital for six weeks, to his bed for four months, and at the time of the trial in July, 1932, was unable to get around except on crutches. At the time of the trial he still had severe pains and great soreness and tenderness in his knee and was unable to place any weight on his right leg. He also had severe headaches, and had run a fever from the time he was stricken until the time of trial. On the 5th day of January, 1932, four months after he was stricken, he submitted to the insurance company proof, upon forms furnished by the company, stating that he had become "physically incapacitated so as to be wholly and permanently unable to engage in any gainful occupation," and, after giving a detailed report as to his illness and disability, stated, "I have been wholly disabled from the 5th day of September, 1931, and in consequence of such disability, believe that I will presumably be wholly and continuously prevented thereby from engaging in any occupation or profession, or performing any work whatsoever for compensation, gain or profit." The company acknowledged the receipt of such proof of loss in a letter which is in the record, admitting that the proof showed that the plaintiff had been "practically" totally disabled since September 5, 1931, but that on account of a statement from a doctor who attended him, that his condition was improving slowly, and that he was able at that time to be partially employed, denied liability, stating, however, that if his "expected recovery should not occur, or the disease should spread, or other complications develop," the company would be willing to reopen the case.

The plaintiff's own testimony, and that of two doctors called by the plaintiff, and the one doctor called by the defendant, shows without question that he had been totally disabled from engaging in any occupation or profession, or from performing any work

whatsoever, from the time he was stricken on September 5, 1931, to the date of the trial in July, 1932, or for a period of more than ten months, and the principal question of fact is as to the permanency of such disability. Drs. Barnes and McClure, who had been treating the plaintiff, the latter continuously up to the time of the trial, testified that the plaintiff's condition was septic, and that he showed general symptoms of an infection; that his physical appearance is not normal; that he shows a pallor and has a peculiar flush occasionally; that it is conjectural as to whether or not his injury will respond to medical treatment; that they had observed little or no improvement in his condition; that it is uncertain whether his temperature is merely a temporary matter; and that it is very uncertain whether the plaintiff's condition can be cured or improved in the future.

A Dr. Johnston, who represented the insurance company, and who had the plaintiff under examination and observation for three days in a hospital, testified that the fixation of the right knee was nearly complete; that there was marked pain over the whole joint on deep pressure; that the plaintiff ran a temperature during the three days he was under observation, and the doctor stated:

"I think the patient was permanently disabled for six or eight months after the onset of his trouble. The patient will without doubt be disabled for two or three months to come, after which time he will have recovered as much as possible. I made the examination just about two months ago. He has not recovered in the two months' time since my examination."

Under the foregoing evidence the trial court found that the plaintiff was totally and permanently disabled under the terms of the policy, and entered judgment for the plaintiff for ten months' compensation, or $1,000, and for an additional amount of $265 for a premium the plaintiff had paid under protest during the continuance of his disability. From this finding and judgment, the defendant has appealed.

The appellant's first contention is that the plaintiff had not complied with the terms of the policy in furnishing his preliminary proof of total and permanent disability. We cannot find in the record that this question was raised at any time in the lower court, and it appears that it is presented for the first time here. We have held that we will refuse to review a question raised for the first time

on appeal. Houts v. Sioux City Brass Works, 134 Iowa 484, 110 N. W. 166. Aside from this, it will be noted that the policy does not provide any particular form of proof, nor indicate of what such proof shall consist, and, too, it must be noted that the proof as furnished by the plaintiff was upon a form furnished by the defendant company. We have held that an insurer may not complain as to the definiteness of the proof when it was furnished upon blank forms furnished by the insurer. Elmore v. Southern Surety Co., 207 Iowa 872, 224 N. W. 32. See, also, Francis v. Travelers Association (Tex. Civ. App.) 260 S. W. 938.

It will be noted also that the policy in suit does not require the furnishing of medical proofs. In Carson v. New York Life Ins. Co., 162 Minn. 458, 203 N. W. 209, 211, the court had under consideration this identical question and in disposing of it said:

"The second contention is that the proof furnished did not make out a prima facie case of disability. Where a policy is payable upon due proof of death of the insured, it is readily seen that, as a rule, no trouble is met with in furnishing conclusive proof. But in a case of this nature, where the insured may not be able to obtain other testimony than his own of a disability which entitles to the insurance, we do not think he should be debarred from presenting his proof in court, if it be not taken as due proof by the company. The policy does not provide such an unreasonable requirement as that the proof of loss must be satisfactory to the insurer. It simply provides for due proof. It does not call for medical proof. The company was advised of the accident and the claim that plaintiff was disabled. His own affidavit of disability was furnished defendant in time, on May 5, 1921, wherein he states that he has been wholly disabled since the 24th of November, 1920, (the time of his injury) 'and will presumably be permanently, continuously, and wholly prevented thereby for life from pursuing any and all gainful occupations'; and he therefore claimed the disability benefit under the policy. That neither the physician who attended him, nor the one designated by defendant to give an opinion, then thought the disability permanent, and so stated in their affidavits, should not conclude plaintiff. That was only their opinion, which, according to the finding of the court and jury, proved incorrect. It must therefore be held that, when the proof plaintiff did present to defendant by his own affidavit of total permanent dis-

ability has been found true, it should be deemed sufficient as due proof under the requirements of the policy, even though he was unable to be fully corroborated by the opinions of the doctors mentioned." See, also Wenstrom v. Ætna Life Ins. Co., 55 N. D. 647, 215 N. W. 93, 54 A. L. R. 289; Aurnhammer v. Brotherhood Acc. Co. 250 Mass. 563, 146 N. E. 47.

We conclude there is no merit in appellant's contention that the plaintiff had not complied, with the terms of the policy in the matter of furnishing proof of his disability.

The next and main contention of the appellant is, that the court erred in its holding that the plaintiff had met the burden of proof imposed upon him to establish the fact that he was "wholly and permanently unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain, or profit," and that the evidence establishes that plaintiff's total disability was only of a temporary character, and that he now suffers only a permanent partial disability.

The appellant cites and relies upon some cases in other jurisdictions, and the following of our own cases, as supporting its contention at this point, viz: Lyon v. Railway Co., 46 Iowa 631; Hurley v. Bankers Life Co., 198 Iowa 1129, 199 N. W. 343, 37 A. L. R. 146; Corsaut v. Equitable Life Assur. Soc., 203 Iowa 741, 211 N. W. 222, 51 A. L. R. 1035; Hawkins v. Ins. Co., 205 Iowa 760, 218 N. W. 313.

In the Lyon case, supra, the court had under consideration a contract not at all similar to the contract in the case at bar. In that case the insurance company agreed to indemnify against loss of time not exceeding twenty-six weeks, while the insured was totally disabled and prevented from transaction of all kinds of business, solely by reason of bodily injury. The case was reversed by this court by reason of the giving of two instructions by the trial court, in which the trial court construed the language of the policy as meaning inability to follow any occupation or business in the usual way, and that the insured might recover though he might be able to do some parts of his accustomed work, and the fact that he might be unable to engage in some business or occupation would not prevent a recovery unless it was a business or occupation which he was qualified to engage in and transact in the usual way. We held these instructions erroneous because under the terms of the

policy the insured must be *totally disabled and prevented* from the transaction of *all kinds* of business in order to recover, and that he could not recover if the proof showed but *partial* disability from pursuing *some* kind of business. The provisions of the contract in the Lyon case were not at all parallel to the provisions in the policy we have under consideration in the case at bar. Moreover, the decision in the Lyon case has been severely criticized by a majority of the courts of other jurisdictions. And in the case of Hurley v. Bankers Life Co., supra, three of the seven members of this court refused to subscribe to the strict doctrine of the Lyon case.

In the Hurley case the contract of insurance provided that the company would waive payment of premium if the insured became "totally, permanently, and incurably disabled, * * * and is thereby prevented permanently, continuously, and wholly from performing any work or following any occupation for compensation or profit." In that case the insured was a farmer. It had become necessary by reason of an accident that his leg be amputated, and such operation was performed leaving a stump of the leg, five inches in length, and in such a condition that an artificial limb could not be used. And we held in that case that the insured was not "totally, permanently, and incurably disabled so as to be prevented permanently, continuously, and wholly from performing any work or following any occupation for compensation or profit." The policy in that case did not indemnify the insured against loss of time and the only benefit accruing under the provisions of the policy was the waiver of the payment of premiums after a total, permanent, and incurable disability occurred preventing the insured from performing any work or following any occupation for profit. There the appellant claimed, as was the claim in the Lyon case, that he was entitled to the waiver of the payment of the premiums as provided in his policy even though he was but *partially* disabled, and a majority of this court held, following the rule in the Lyon case, that the insured could not recover.

In the Hurley case we said:

"The rule that seems to be emphasized by some of the courts is that the question as to whether or not the insured is totally disabled within the meaning of the contract is a question for the jury under the particular facts of each case." And we also said: "It must be conceded that the majority of the courts of the country are not in line with our conclusion in the Lyon case."

In both the Lyon and Hurley cases the question was as to the *total disability* of the insured, and the question as to the permanency of the disability was not involved. In the case at bar a total disability is conceded as having existed for at least ten months, and the question here involved is as to the *permanency* of such disability.

In the Corsaut case, supra, we had under consideration a policy very similar, if not identical, in its provisions with that in the Hurley case. In the Corsaut case the plaintiff was claiming the benefit of the waiver of the payment of a premium falling due January 19, 1923, by reason of the fact that the insured had prior to that time become wholly, permanently, and incurably insane, and we reversed a finding for the plaintiff on the sole ground that the proof did show such to be the fact. The proof showed that the insured was a practicing physician, and that he continued in the active practice of such profession at least six months after he was claimed to have been "totally, permanently, and incurably disabled." We also said in that case:

"It may be conceded that the question of whether or not an insured had become 'wholly and permanently disabled' might, under many circumstances, very properly be one for the determination of the jury."

But we held there, in view of the record, that there was not sufficient evidence as to the insured's disability to make a jury question.

In the Hawkins case, 205 Iowa 760, 218 N. W. 313, we had under consideration a claim made by the plaintiff for indemnity, the plaintiff claiming that he had become wholly and permanently disabled in March, 1922, and that such disability continued until November 1, 1925, and the action was brought after the claimed disability had terminated, and we there simply held that the policy did not embrace recovery for a disability which has been total for years, but which has terminated at the time action for recovery is instituted. We can find no support for the plaintiff's contention in the foregoing cases. The appellant says in his brief: "We recognize that there seems to be an apparent lack of harmony in the authorities of this jurisdiction upon clauses of this character, and that in the recent case of Kurth v. Continental Life Ins. Co., 211 Iowa 736, 234 N. W. 201, opinion by De Graff, concurrence by

Justices Faville, Stevens, Albert, Morling, and Wagner, a different result is arrived at." And the appellant attempts to reconcile the Kurth case with the prior cases of this court heretofore cited and discussed.

The Kurth case is the last pronouncement of this court on the subject we have under discussion. And in that case the Lyon, Hurley, and Corsaut cases were reviewed and were held not to be controlling by reason of the difference in the contracts and the peculiar circumstances in each of the cases. In the Kurth case we had a contract very similar to the one in the case at bar, and we there said:

"The next question to be determined is whether or not the appellee has been wholly disabled for a period of not less than sixty days, and whether or not such disability suffered for that period was presumably permanent at the time he furnished proofs and has been total and continuous and thereby has prevented him from engaging in any gainful occupation. In view of the express provisions of the contract, it cannot be said that the disability of the insured, to entitle him to the benefits agreed upon, shall be decided by a literal construction of the description of disability as contained in the insuring clause, to wit, such presumably permanent disability that he will be wholly and continuously prevented from pursuing any gainful occupation, for the contract tends to refute it. The following clause is quoted from the policy:

" 'It is agreed that independent of all other causes of total and permanent disability the entire and irrecoverable loss of the sight of both eyes, or severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot will be considered as total and permanent disability within the meaning of this provision.'

"It is common knowledge that in none of these stated causes of disability would the unfortunate victim be wholly and continuously prevented thereby from pursuing any gainful occupation. Persons so afflicted are seen on frequent occasions engaged in various employments whereby they earn a livelihood without resorting to the near beggary vocation of selling papers, pencils, and shoestrings in public places. It is apparent by this clause, inserted upon the volition of the company and not at the request of the appellee, that it was never intended that the insured be rendered absolutely helpless and continue to be absolutely helpless before becoming entitled to

the benefits promised. If it were otherwise, then the appellee must suffer also a destruction of his mental faculties as well as his physical functions."

We desire to note at this point that the contract of insurance in the case at bar contains the same provisions as to the loss of eyes, hands, and feet, being considered permanent disability as was contained in the Kurth case, and the rule of construction in that case announced should be controlling in the case at bar.

We further said in the Kurth case:

"The words 'permanently' and 'continuously', standing alone, would imply that the disability was a lasting and absolutely fixed condition, but when these words are taken in connection with the language used in other provisions of the contract, the only fair construction to be placed on such words is, not that the disability which has existed during sixty days must exist forever, but that such disability has existed for a period of not less than sixty days and by a fair presumption will continue for a future period."

To sustain this ruling the court quotes the provision of the policy providing that, after acceptance of proofs of disability, the company shall have the right thereafter to require proof of the continuance of such disability, and that, if it appears later that the insured has recovered to such an extent as to be able to engage in some gainful occupation, the company's obligation to pay the indemnity shall cease. The policy in the instant case contains identically the same provision.

The opinion in the Kurth case further proceeds:

"By the insertion of the foregoing clause in the contract, it is obvious that the disability by which the benefits may accrue and become obligations of the company is not absolutely expected to be absolutely permanent and absolutely continuous and to absolutely prevent the insured during his after lifetime from engaging in any gainful occupation, because this insertion was intended to govern when and if such presumably permanent disability might be removed by some means or other, and the company desired what benefits it might have by reason of such removal. It must therefore be held, as a matter of law, that the insured under this contract was required to furnish proofs only of the fact that he had been wholly disabled by bodily injury or disease for a period of not less than sixty days,

and that such disability is presumably permanent, and that he will be presumably wholly and continuously prevented thereby from pursuing any gainful occupation. * * * If the construction sought to be placed on the policy by the defendant insurance company should prevail, the waiver of premiums would then mean nothing; secondly, the installment payment provisions would mean nothing, as they, if any there be due, are to be paid to the insured himself."

It is said by appellant that the policy in the Kurth case provided that the disability must be *presumably permanent.* We think that the incorporation of the word presumably in the policy in the Kurth case does not distinguish it from the case at bar. The policy provides for the payment of the indemnity installments after the disability has continued for a period of ninety days, and further provides a right for the company to require proofs of the continuance of such disability not oftener than once a year; and, further, that in furnishing the printed blank proof of loss, the company has incorporated therein the phrase "believe that I will presumably be wholly and continuously prevented thereby from engaging in any occupation," etc. Thus by the terms of the policy and by the preparation and furnishing of the blank proof of loss, the insurance company has placed a construction upon its own contract squarely within the rule announced in the Kurth case. The words *wholly* and *permanently* standing alone might mean that the total disability must be a lasting one, but, when these words are taken in connection with the other provisions of the policy, the fair construction to be put upon them is, not that the total disability shall continue or exist forever, but that a disability which exists continuously for not less than ninety days prior to the furnishing of proof is, within the meaning of the policy, a permanent disability. The word "permanent" as used in the policy does not mean forever. It does not embrace the idea of absolute perpetuity, or lasting forever, or existing forever. It means for an indefinite and undeterminable period. Its meaning must be construed according to its nature and in its relation to the subject-matter of the contract in which it appears. Texas & P. Ry. v. City of Marshall, 136 U. S. 393, 10 S. Ct. 846, 34 L. Ed. 385; Hascall v. University, 8 Barb. (N. Y.) 186; Dale v. Irwin, 78 Ill. 181; Lord v. Goldberg, 81 Cal. 596, 22 P. 1126, 15 Am. St. Rep. 82; Miller v. Holmes, 89 Vt. 261, 95 A.

541; Penn Mut. Life Ins. Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382.

The ruling in the Kurth case is supported by the following cases: Penn Mutual Insurance Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382; Texas & P. R. Co. v. City of Marshall, 136 U. S. 393, 10 S. Ct. 846, 34 L. Ed. 385; Wenstrom v. Ætna Life Insurance Co., 55 N. D. 647, 215 N. W. 93, 54 A. L. R. 289; Maze v. Equitable Life Ins. Co., 188 Minn. 139, 246 N. W. 737; Ætna Life Ins. Co. v. Spencer, 182 Ark. 496, 32 S. W. (2d) 310; Berry v. United Life & Acc. Ins. Co., 120 S. C. 328, 113 S. E. 141; Storwick v. Reliance Life Ins. Co., 151 Wash. 153, 275 P. 550; Mass. Bonding & Ins. Co. v. Worthy (Tex. Civ. App.) 9 S. W. (2d) 388; Industrial Mut. Indemnity Co. v. Hawkins, 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029; Harrington v. Southern Surety Co., 206 Iowa 925, 221 N. W. 577; Fitzgerald v. Globe Indemnity Co., 84 Cal. App. 689, 258 P. 458; New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753; Provident Life v. Harris, 234 Ky. 358, 28 S. W. (2d) 40; Eastep v. Northwestern National Life Ins. Co., 114 Neb. 505, 208 N. W. 632; Hamblin v. Equitable Life, 124 Neb. 841, 248 N. W. 397, and Hawkins v. John Hancock Mutual Life Ins. Co., 205 Iowa 760, 218 N. W. 313, 315.

The last above-cited case, Hawkins v. John Hancock Mut. Life Ins. Co., is cited and relied upon by the appellant herein, but it furnishes no support for appellant's contention. In that case we said:

"Total or partial recovery from a seemingly permanent injury does occur. In order to claim the benefit, proof must be presented. The proofs that may be presented during the first six months may be entirely different from the proofs that may be presented after a year or two. Notwithstanding this possibility, it would be unjust to withhold the benefit merely because future developments may show that an injury seemingly permanent is in fact temporary. It is one thing to withhold benefits as long as life lasts in order to avoid the possibility of any mistake and pay nothing until it is finally and conclusively determined that the injury is permanent, which in many cases can only be at death, and an entirely different thing to accept provisionally apparent proofs of permanency and make payment accordingly—that is, to give the insured the

benefit of his seeming condition while it lasts with the right of the company to discontinue should the condition turn out to be temporary. Fairness to the policyholder requires that reasonable evidence of permanency be accepted and the benefit paid so long as such apparent permanency exists, but, if it later appears that the seemingly permanent condition is not such, that then the company shall be no longer held to continue paying benefits."

In the contract we have under consideration, we do not have the words "totally", "continuously", or "incurably", as appears in some of the contracts in some of the cases cited by appellant. The contract here provides that if the insured has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation for profit, the indemnity benefit shall be paid. It does not provide he must be totally, permanently, continuously, and incurably incapacitated. But it does provide, by a fair construction, that if he becomes wholly disabled, and that such disability will presumably continue to exist for an indefinite period, he will be entitled to the indemnity benefits. The contract provides that the company may at later times require proof as to the continuance of the disability. In other words, as said in the Hawkins case and the Kurth case:

"It would be unjust to withhold the benefit merely because future developments may show that an injury seemingly permanent is in fact temporary. * * * Fairness to the policyholder requires that reasonable evidence of permanency be accepted and the benefit paid so long as such apparent permanency exists."

We are of the opinion that the clear meaning of the provisions of this policy is, that if the insured is wholly and permanently disabled for a period of ninety days, with a reasonable presumption that such disability will continue for an indefinite period, that the insured will be entitled to the benefits provided by the policy. The latter part of the indemnity clause providing that if such disability ceases to exist, the company will be relieved from making further payments, so modifies, limits, and defines the word "permanent" as used in the first part of the indemnity clause, that we are led to the conclusion and construction as stated herein.

In consequence of the foregoing discussion, and the cited cases, we now hold and announce the following rule: That under pro-

visions such as are contained in the policy in suit the insured is entitled to the benefit of the indemnity as provided therein upon a showing that he has been wholly and permanently disabled from pursuing any occupation or labor for profit for a period of ninety days, and that there is a reasonable presumption that such disability will continue for an indefinite period. Reserving, however, to the insurance company the right, at later time or times, to require proof of the continuance of the disability, as provided by the indemnity provisions of the policy.

Such rule finds support in our prior pronouncements, and in a great majority of other jurisdictions.

■ This case was commenced as a law case. No equitable issues were involved. No motion was made to transfer to equity. The case was tried to the court and judgment was entered as in a law case. On appeal errors are assigned as in a law case. Under these circumstances it should be here considered as a law case. See Hostler Coal & Lbr. Co. v. Stuff, 205 Iowa 1341, 219 N. W. 481.

The trial court in entering judgment for the plaintiff necessarily made a finding that the plaintiff had been wholly unable to engage in any occupation or profession or to perform any work for compensation or profit for a period of more than ninety days, and that there was a reasonable presumption that such disability would continue for at least an indefinite period. Such finding by the trial court has the same weight and effect as a verdict of a jury. And we hold that such finding is supported by the evidence, and that a contrary finding would not have sufficient support in the record. In our judgment the case is one for affirmance.—Affirmed.

STEVENS, ALBERT, KINDIG, KINTZINGER, and MITCHELL, JJ., concur.

CLAUSSEN and DONEGAN, JJ., dissent.

CLAUSSEN, C. J. (dissenting)—I am unable to agree with the majority opinion. The opinion is inconsistent with our former holdings in the cases to which reference is made. This court is committed to the rule that the word "permanent" should be given its ordinary meaning, that is to say, that permanent disabilities are such as will last through life. We have recognized that whether or not an injury is permanent is a fact to be determined by the jury or other trier of the facts upon the testimony produced upon the trial, that

there must be some evidence from which it can be found that the injuries will last through life, but that the fact is to be determined from a preponderance of the evidence. The situation in relation to proof of permanency, under our rule, is substantially the same as exists in cases involving future pain and suffering, future items of expense, and things of that kind. The fact is to be found from the preponderance of evidence and, of course, this means that permanency need not be established to a certainty. Whether disabilities are, in truth, permanent cannot be known for a certainty until the close of life has told the whole story. Still every injury is either temporary or permanent. The rights of the parties require the determination of the character of the disability prior to death. Under the rule which we have adopted, the character is to be determined, as any other fact, from a preponderance of the evidence and such determination fixes the rights of the parties until and unless changes demonstrate that the finding was erroneous, in which event, under provisions of the policy, the benefits are cut off.

I think our rule in this respect is the better rule and it seems to be sustained by the greater weight of authority. The cases sustaining the rule are the following: Hawkins v. John Hancock Mut. L. Ins. Co., 205 Iowa 760, 218 N. W. 313; Kurth v. Continental Life Ins. Co., 211 Iowa 736, 234 N. W. 201; Steffan v. Bankers Life Co., 267 Ill. App. 248; Metropolitan Life Ins. Co. v. Noe, 161 Tenn. 335, 31 S. W. (2d) 689; Home Ben. Assn. v. Brown (Tex. Civ. App.) 16 S. W. (2d) 834, 835; Ginell v. Prudential Ins. Co., 237 N. Y. 554, 143 N. E. 740; Brod v. Detroit Life Ins. Co., 253 Mich. 545, 235 N. W. 248; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; Shipp v. Metropolitan Life Ins. Co., 146 Miss. 18, 111 So. 453; Ellis v. New York Life Ins. Co., 214 Ala. 166, 106 So. 689. See, also, Maze v. Equitable Life Ins. Co., 188 Minn. 139, 246 N. W. 737. The cases to the contrary are the following: Penn. Mutual Life Ins. Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382; Adamson v. Metropolitan Life Ins. Co., 42 Ga. App. 587, 157 S. E. 104; Equitable Life Assurance Soc. v. Serio, 155 Miss. 515, 124 So. 485; Wenstrom v. Aetna Life Ins. Co., 55 N. D. 647, 215 N. W. 93, 54 A. L. R. 289; Laupheimer v. Mass. Mut. L. Ins. Co., 224 Mo. App. 1018, 24 S. W. (2d) 1058. See, also, Maze v. Equitable Life Ins. Co., supra. The case of Maze v. Ins. Co., supra, is cited both ways. The case is argued one way and decided the other.

The other question has to do with the character which disabilities must possess in order to be total. The case of Lyon v. The Railway Passenger Assurance Co., 46 Iowa 631, was decided in 1877. It has been generally regarded as definitely committing this court to the rule that injuries to be total within the meaning of provisions of the kind under consideration must completely disable the insured. In subsequent opinions this court has so regarded that case. I doubt very much whether it was the intention of the court to adopt such a rule by what was said in the Lyon case, but on account of the fact that in subsequent cases the court has, in effect, so considered the case, I believe if any change is to be made in our position, it might better be done by overruling the case and restating our position, than by attempting to modify the effect which this case has had on our law. The Lyon case came before the court on objections to two instructions. The instructions under consideration in that case went fully as far in favor of the insured as any court has gone and I may say that some of the courts have gone a long way. In discussing these instructions, this court went to the other extreme. It was a great many years before the question again came before the court, but in late years it has been here in the cases of Hurley v. Bankers Life Co., 198 Iowa 1129, 199 N. W. 343, 37 A. L. R. 146; Corsaut v. Equitable Life Assur. Soc., 203 Iowa 741, 211 N. W. 222, 51 A. L. R. 1035; Kurth v. Continental Life Ins. Co., 211 Iowa 737, 234 N. W. 201. In the Hurley case, which was decided in 1924, an examination was made of all of the authorities and the court specifically expressed its adherence to the rule announced in the Lyon case. In the Corsaut case, decided in 1927, the rule was followed upon the authority of the Hurley case. The Kurth case was decided in 1931. In the opinion Judge DeGraff quotes from a number of cases which are inconsistent with the rule formerly recognized by this court. I think on the whole the language used in this case is in conflict with much that was said by the court in the earlier cases. The facts upon which the case is based are sufficient to sustain the case without any deviations from the rules announced in the earlier cases. The opinion refers to the earlier cases and approves them. The holding is entirely consistent with the earlier cases, but the reasoning by which the result is reached is the reasoning which is adopted by courts adhering to the other rule. In the Kurth case the record was such that a finding that the injuries were both permanent and total could be made.

In the Hurley and Corsaut cases the testimony showed conclusively that the injuries fell far short of being total and the same is true of the injuries in the original Lyon case.

In this situation it occurs to me we have not had occasion to define the extent and limits to which disabilities must go in order to be total.

I am inclined to believe that the better rule and the rule supported by the weight of authority in other states is that disability, in order to be total, must, in effect, prevent the insured from effectively engaging in any business, profession, or occupation in the light of the circumstances in which the insured finds himself. The foregoing sentence does not represent an attempt to accurately state the rule, but I think it is sufficient for the present purpose. This rule would be inconsistent with the language of all our cases but it would not be inconsistent with the matters actually decided in such cases. It would be a very material extension of liability beyond what a reading of the cases would indicate our rule to be at the present time. In a proper case I would be willing to clarify our holdings in this respect.

I do not believe that the present case is one in which this should be undertaken for the reason that the facts bring the case squarely within four of our cases, namely, the Lyon, the Hurley, the Corsaut, and the Kurth cases. In this situation it becomes essential to disclose the character of plaintiff's disabilities as revealed by the record.

Over proper objection, plaintiff was permitted to answer this question:

"Q. I will ask you, Mr. Garden, whether or not you are now physically incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or perform any work whatever for gain or profit?"

Over proper objection, two physicians, testifying for plaintiff, answered the following question in the affirmative:

"Q. You may state whether or not Archie E. Garden is now physically incapacitated so as to be wholly and permanently unable to engage in any occupation, profession, or to perform any work whatsoever for compensation, gain or profit?"

Such questions clearly invaded the province of the trier of the fact, and in consequence were incompetent. See Justis v. Union

Mut. Cas. Co., 215 Iowa 109, 244 N. W. 696, in which a multitude of the cases of this court are collected, all holding such questions incompetent. The inherent vice of questions of this character is that the answer to the question involves a construction of the contract by the witness, as is clearly demonstrated by the subsequent examination of the witnesses from which we quote. This is what the first physician said:

"Q. Doctor, would you say that everybody that had arthritis is permanently and totally disabled from performing any work or labor? A. When it is as extreme as that he is for the time being permanently and totally disabled.

"Q. What do you mean by permanent? A. This permanent injury to the knee joint, septic injury.

"Q. You use the term permanent as applied to the injury? A. Yes, sir.

"Q. You do not mean to tell the court he is permanently disabled from ever performing any work or labor? A. I do not."

This is what the second physician said:

"Q. Would you say to the court, or did you say to the court, that in your opinion here that your nephew would never be able to engage in any work? A. I did not."

The proofs filed by plaintiff with his claim for disability benefits are in the record. In them appear the following question and answer:

"How soon in your opinion will insured be able to engage in any occupation, partial or otherwise?"
"Able to be partially occupied now."

This is the answer of plaintiff's own physician. There is no evidence in the record, not so much as a single sentence or single word which associates *totality* with *permanency* in regard to plaintiff's disabilities. He was, we will say, totally disabled at the time of the trial. He had then been ill ten months. He could not be made well in a day. In that no man, even one skilled in medicine, can tell how soon the recuperative powers of the body will work their changes, the duration of his disabilities was then "indefinite". But unless it be that the duration for a period of ten months of a disease from which most people recover, and in relation to which

the prognosis of plaintiff's physicians is evasive rather than uncertain, warrant a finding that plaintiff's disabilities would be of "indefinite duration" in the sense that they would likely endure through life, there was no evidence from which a finding of totality and permanency could be made.

The case was tried as in equity and is here for trial anew. We are not concluded by any finding of fact in the lower court. The only conclusion which a reading of the record warrants is that plaintiff will have a stiff knee. It is a matter of common knowledge that a stiff knee does not produce total disability, and there is no evidence in the record from which it could be found that plaintiff was so situated that a stiff knee would so incapacitate him.

The majority opinion holds that disabilities far short of total, and much less enduring than "permanent", entitle the insured to disability benefits under policies of the kind under consideration. In truth, it writes a new contract of insurance.

I am authorized to say that Mr. Justice DONEGAN concurs in this dissent.